JOHN WHEATCROFT and JAMES WHEATCROFT, Appellants, v. J. N. GRIFFITHS and THE FIRST NATIONAL BANK OF EMMETT, a Corporation, Respondents.

[245 Pac. 71.]

AGRICULTURE — FARM LABORER'S LIEN — EFFECT OF MERGING LIENABLE AND NONLIENABLE ITEMS.

1. Where a farm laborer performs services for which he is to be compensated under entire contract embracing lienable and nonlienable items, he is only entitled to lien for lienable items when value thereof can be distinguished from nonlienable items, and when value of services cannot be distinguished lien must fail.

2. In action by farm laborers to foreclose laborers' liens, evidence held insufficient as to value of lienable services, apart from value of nonlienable services, to sustain liens under C. S., sec. 7372.

Publisher's Note.

1. See 1 R. C. L. 788; 18 R. C. L. 942.

See Agriculture, 2 C. J., sec. 69, p. 1010, n. 43 New; sec. 104, p. 1016, n. 72 New.

APPEAL from the District Court of the Fourth Judicial District, for Camas County. Hon. H. F. Ensign, Judge.

Action to foreclose two farm laborers' liens. Judgment for defendants. *Affirmed.*

Frank Croner, for Appellants.

"Anyone performing labor or rendering services in the production of a crop may have a lien for his labor and services on the entire crop produced." (*Beckstead v. Griffith,* 11 Ida. 738, 83 Pac. 764.)

C. S., sec. 7372, is remedial and should be liberally construed in favor of those for whose benefit it was enacted.

"It is our idea that it was the intention of the legislature to give a lien on any crops raised on any part of a farm for any tilling of any portion of that farm." (*Hubbell v. Cantonwine,* 123 Wash. 328, 212 Pac. 176.)

R. M. Angel, for Respondent First National Bank of Emmett.

"A court of chancery is not authorized to extend the lien to cases not provided for by statute." (*Buchan v. Sumner,* 2 Barb. Ch. (N. Y.) 165, 47 Am. Dec. 305; *Beckstead v. Griffith,* 11 Ida. 738, 83 Pac. 764; *Chapman v. Averill Machinery Co.,* 28 Ida. 121, 152 Pac. 573.)

"Where a claim of lien includes both lienable and nonlienable items, and by reason of the method of stating them the nonlienable items cannot be segregated from the general aggregate, the lien must fail." (18 R. C. L. 942, and cases cited; *Bicknell v. Trickey,* 34 Me. 273; *Adler v. World's Pastime Exp. Co.,* 126 Ill. 373, 18 N. E. 809; 2 Parsons on Contracts, 8th ed., p. 519; *Baker v. Fessenden,* 71 Me. 292; *Edgar v. Salisbury,* 17 Mo. 271; *Nelson v. Withrow,* 14 Mo. App. 270; *Getty v. Ames,* 30 Or. 573, 60 Am. St. 835, 48 Pac. 355.)

VARIAN, Commissioner.—This is an action to foreclose two farm laborers' liens upon hay crops grown upon prem-

ises farmed by J. N. Griffith during the season of 1921. The claims of lien are identical, except as to the amount of wages claimed and the times of employment. From a judgment denying a lien, plaintiffs appeal.

A lien is claimed upon "All the hay now in stack, consisting of alfalfa, timothy and mixed hay, now located upon the ranches known as the Couch and Griffith ranches located about five miles North and West of Fairfield, in Camas County, Idaho." After naming said Griffith as the owner, or reputed owner, of said ranches, each claim reads, "That at the instance and request of the defendant, J. N. Griffith, . . . . performed labor upon said crops of hay in irrigating, cutting and stacking the same, and as general laborer upon the land and premises farmed and occupied by the defendant."

Taken in their entirety, the notices of claim of lien substantially comply with the statutory requirements.

J. N. Griffith defaulted, and the cause was tried upon the amended complaint and the answer thereto of the respondent The First National Bank of Emmett. The bank's interest in the hay involved in this action is that of mortgagee.

Farm laborers are granted a lien for their services by section 1 of an act of the legislature, approved March 10, 1903, amending the Lien Act of 1899; C. S., sec. 7372.

"Section 1. Any person who does any labor on a farm or land in tilling the same, or in cultivating, harvesting, threshing, or housing any crop or crops raised thereon has a lien on such crop or crops for such labor, and such lien shall be a preferred and prior lien thereon to any crop or chattel mortgage placed thereon, and any mortgagee taking a chattel or crop mortgage on any crop or crops, upon which any person shall perform labor in cultivating, harvesting, threshing, or housing said crop, shall take such mortgage subject to, and such mortgage shall be a subsequent lien to that of the person or persons performing such labor as to a reasonable compensation for such labor; Provided, That the interest in any crop of any lessor or lessors of land

where the premises are leased in consideration of a share in the crop raised thereon is not subject to such lien." (Sess. Laws 1903, p. 93.)

The trial court found that appellants' labor consisted in feeding livestock, milking cows, fixing fences and other general farm duties, and that they performed no labor whatever upon the crops of hay sought to be charged with lien during the months of November and December, 1920, or the months of January, February, March and April, 1921. He further found that in the months of May, June, July, August, September and October, 1921, "the plaintiffs continued to perform general farm labor and worked a portion of the time upon the crop of hay, but as to what portion of time the evidence is indefinite and uncertain, and the court is unable to determine from the testimony what labor was performed by either of the plaintiffs upon said crop, or segregate the time so spent from the time occupied in general farm labor."

As conclusion of law, the court held that neither plaintiff was entitled to any lien for the months of November and December, 1920, and the months of January, February, March, and April, 1921, having performed no lienable labor during said months; "that the evidence as to what labor was performed upon said crop of hay for the remaining period of time is insufficient to enable the court to segregate the lienable and nonlienable items, and the said plaintiffs are not entitled to liens for labor other than as defined by statute, and are not entitled to lien upon the said crop for time spent in feeding and caring for stock, milking cows and the like, and the said defendants for the foregoing reasons have no lien upon the crop of hay described in the complaint."

It was decreed that the appellants take nothing by their complaint, and that the respondent bank recover its costs. Apparently appellants did not insist upon a personal judgment in this action against their employer, Griffith.

The record discloses that appellant John Wheatcroft was employed by J. N. Griffith, who had leased a ranch from

one Couch, paying a rental therefor of one-third of the crops. Griffith also owned a ranch of his own, there being altogether about four hundred acres in crop on the two ranches, which adjoined each other. Fifty acres were sown to wheat, and the balance of the four hundred acres was in alfalfa, timothy and mixed hay during the season of 1921. Twenty-four stacks of hay were cut from the first cutting. Four of these stacks went to Couch as his rental, and the remaining twenty stacks belonged to Griffith. The second cutting was nearly all alfalfa and was not irrigated. It amounted to about forty tons, thirty of which were housed in the Griffith barn and the remainder used to top out stacks from the first cutting.

Appellant John Wheatcroft was employed about October 27, 1920, to do general farm work. From November, 1920, to April 28, 1921, he assisted his employer in feeding five hundred head of cattle, assisted in milking fifteen or twenty head of cows night and morning, and did other chores about the place. He also built fences around the 1920 hay crop, then in the stack, during November of that year. About April 1, 1921, he commenced to clean out the ditches and fix the outside fences on the Couch place. On June 1, 1921, the water was turned in, and he continued to irrigate the hay lands, assisted by his employer, from that time until haying in July. When the cattle were taken out on April 28, 1921, John Wheatcroft finished seeding fifty acres of wheat, which operation had been commenced by one Johnson, another employee, and occupied about five days of said appellant's time. Haying commenced about July 5th or 6th, 1921, with a crew of about fifteen men. The hay crew was laid off about August 10, 1921, when the first cutting was in the stack. The two Wheatcrofts began putting up the second cutting of hay about September 1st, and completed their labor in the first week in October. John then built fences around the hay stacks, which were located in three different places on the two ranches.

James Wheatcroft was employed about October 4, 1920, to do general farm work; he had had no experience in farm-

ing and had been a miner. He is the father of the other appellant. He helped in feeding and milking the cows, cleaned out the barn, and did other odd jobs about the place. In April, 1921, he helped his son fix fences and clean out ditches. He put in some garden and helped with the haying beginning some time in July, but did not work all the time on the first cutting. He and his son, with one day's assistance from Griffith, put up the second cutting of hay, He could not tell when he began irrigating, nor how many days were put in in irrigating the hay. (Griffith testifies that he and John alone did all the irrigating.) Said appellant also testified that he raked hay some, but does not know how many days, nor can he tell how much time he spent in cleaning ditches, or any work performed by him. He generally went to work with the rest at 6 o'clock in the morning, and returned about 5 o'clock in the afternoon, and then milked until dark.

It appears from the record that the cows were kept for the revenue they produced from the sale of butterfat, and not solely to provide food for those engaged in working the farm.

The first assignment of error is as follows:

"The court erred in its third finding that the evidence is indefinite and uncertain as to what labor was performed by either of the appellants upon the crop of hay in the months of May, June, July, August, September and October, 1921, and that the time so spent could not be segregated from the time occupied in general farm labor."

It appears from the record that both lien claimants, during all of the times they were engaged in fixing fences, cleaning out ditches, irrigating or working with the hay, were also devoting a portion of their time to other labor, such as milking cows, cleaning the barn and doing other chores. The amount of time consumed by either claimant in tilling the land, or in cultivating, or in harvesting, or in housing the hay crops in question, cannot be determined with any degree of certainty. There is no evidence of the value of such services for the time rendered, nor for their

services in milking, etc. So far as appears from the record, the fencing repairs made in April, 1921, might have been for the purpose of inclosing pasture land not used in grow-ing the hay crops. There is no connection shown between the fencing repairs and the hay crops.

Under the statute, labor performed in cultivating, har-vesting and housing the hay crop constitutes lienable items. Perhaps the item of labor for fencing the stacks containing the 1921 hay crop is lienable and may be reasonably con-strued as a charge for "housing."

During all of the period appellants were at labor on items of work for which they were entitled to a lien, they were at the same time engaged in performing services for which there is no lien, such as milking. Griffith, it is true, testified that the milking consumed an hour and a half night and morning, each day, but there is no evidence to show the value of the separate items of labor.

·No attempt was made in the complaint or the notice of claim of lien to segregate the lienable items of labor from the nonlienable items.

"The rule seems to be that, where lienable and nonlienable items are included in one contract for a specific sum, or are made the basis of a lumping charge, so that it cannot be perceived from the contract or account, what proportion is chargeable to each, the benefit of the mechanic's lien law is lost. In such case, the court cannot, by extrinsic evi-dence, apportion the amount of the entire charge or contract price between the lienable and nonlienable items. But where the claimant's demand, made in good faith, consists of several different items, separately charged, some of which are by law a lien upon the property, and others do not come within the scope of the statute, he may enforce his lien so far as given by law, and it is not vitiated because he has included therein nonlienable items." (*Allen v. Elwert,* 29 Or. 428, 44 Pac. 823 (826).)

See, also, *Getty v. Ames,* 30 Or. 573, 60 Am. St. 835, 48 Pac. 355; Boisot on Mechanics' Liens, sec. 428; 2 Jones on Liens, sec. 1323. [1] Where a farm laborer performs ser-

vices for which he is to be compensated under an entire contract embracing both lienable and nonlienable items he is only entitled to a lien for the value of the lienable items when the value thereof can be distinguished from the amount due for nonlienable items. If the value of the lienable services cannot be distinguished from the value of the nonlienable services, the lien must fail. (*Lee v. Lee*, 48 N. D. 971, 188 N. W. 43; *Clark v. Brown*, 141 Cal. 93, 74 Pac. 584.)

[2] In the instant case, there is no sufficient evidence as to the value of the lienable services apart from the value of the nonlienable services, or *vice versa*. Appellants have not brought themselves within the rule laid down in the North Dakota and California cases just cited.

The other assignments of error are to the effect that the court erred in its conclusions of law that there was no lien for the labor of appellants covering the period between October, 1920, and May, 1921; that the trial court could not segregate the lienable and nonlienable items; and in entering judgment against appellants. These assignments are disposed of in the discussion of the case. There is no error in the record.

I therefore recommend that the judgment of the court below be affirmed.

William A. Lee, C. J., and Wm. E. Lee, Budge, Givens and Taylor, JJ., concur.

PER CURIAM.—The foregoing is hereby adopted as the opinion of the court, and the judgment of the trial court is affirmed, with costs awarded to respondents.