(No. 5633.  May 21, 1931.)

.WM. ROBERTS, Respondent, v. NELLIE P. BEAN, Appellant.

[299 Pac. 1081.]

Guy L. Tyler and Carl C. Christensen, for Appellant.

H. J. Swanson, for Respondent.

McNAUGHTON, J.—This is an action on a laborer's claim of lien for wages against crops, principally a hay crop. The action is against the land owner and her tenant. The tenant defaulted, but the land owner defended. Judgment was entered against the tenant for $465 balance in wages, and against the owner for $389.88, which the trial court found to be protected by lien against crops appropriated by the land owner. The owner appeals.

By appropriate assignments the judgment is challenged on two general grounds:

1st. That the lien claim failed because part of the services under a lump sum price contract of employment were for items of service nonlienable, which under the evidence could not be segregated from lienable items.

2d. That any statutory lien in behalf of the laborer was inferior to the lien of the land owner contained in the lease of land upon which the crops were raised.

The contract of employment was by the month at $90 per month. Respondent worked from March 15th to September 15th, six months, and was paid on account of said labor only $75.

Although the labor was principally field labor in producing wheat, oats, barley and hay, it is claimed by appellant that claimant devoted a considerable portion of the time employed at milking and other chores which is not lienable labor. This developed on cross-examination but no considerable amount of time was shown to have been devoted to nonlienable labor except milking. It appears claimant spent "about" an hour each morning and evening milking three or four cows. He testified he helped clean the barns "mighty seldom. I was in the field most of the time; that was Timmons' work." He also said "we done a lot of repairing fences." It was not shown what if any amount of time he personally spent at fence repairing. From the whole testimony it appears quite clearly that his job, as contemplated by the contract of employment, consisted of field work, caring for the horses he used in the field, and in assisting in milking night and morning.

Appellant, on this phase of the case, relies on *Wheatcroft v. Griffiths,* 42 Ida. 231, 245 Pac. 71. In that case, "The trial court found that appellants' labor consisted in feeding livestock, milking cows, fixing fences and other general farm duties, and that they performed no labor whatever upon the crops of hay sought to be charged with lien during the months of November and December, 1920, or the months of January, February, March and April, 1921. He further found that in the months of May, June, July, August, September and October, 1921, 'the plaintiffs continued to perform general farm labor and worked a portion of the time upon the crop of hay, but as to what portion of time the evidence is indefinite and uncertain, and the court is unable to determine from the testimony what labor was performed by either of the plaintiffs upon

said crop, or segregate the time so spent from the time occupied in general farm labor.' "

Commenting on this, the supreme court said: "During all of the period appellants were at labor on items of work for which they were entitled to a lien, they were at the same time engaged in performing services for which there is no lien, such as milking. Griffiths, it is true, testified that the milking consumed an hour and a half night and morning, each day, but there is no evidence to show the value of the separate items of labor," and announced the rule as follows: "If the value of the lienable services cannot be distinguished from the value of the nonlienable services, the lien must fail." It is appellant's contention in this case that there being no evidence by which the value of the nonlienable item of milking and chores is fixed the lien for all the labor must fail.

It does not appear that the contract of hiring fixed the value of the service in the Wheatcroft case. In this case respondent is not suing for value of services on *quantum meruit*, but for value of services fixed by reasonable contract. It seems to us that where the amount of the wage is fixed by contract and the total hours of work is a fixed amount, and the number of such hours devoted to nonlienable labor is fixed, the value or percentage of the wages devoted to lienable labor is a mathematical calculation and could not be fixed by evidence of real value of either the lienable or nonlienable labor. For, whether such labor was really worth more or less than the contract rate would be immaterial.

However, we find some difficulty with the trial court's mathematics in this case. He calculated the milking consumed one-eighth of the hours of employment. Respondent testified he worked from 5:30 in the morning till 7 or 8 in the evening. This is evidence that he worked till 7 in the evening. Beyond that it is too indefinite. Respondent worked not to exceed 70 or 71 hours a week, 14, or about one-fifth of which was in milking. It would appear four-fifths of his hours and four-fifths of his wage was for lienable items of labor.

Neither the lien contained in the lease nor its provisions as to division forestall the labor lien.

C. S., sec. 7372, provides:

"Any person who does any labor on a farm or land in tilling the same, or in cultivating, harvesting, threshing, or housing any crop or crops raised thereon, has a lien on such crop or crops for such labor. Such lien shall be a preferred and prior lien thereon to any crop or chattel mortgage placed thereon, and any mortgagee taking a chattel or crop mortgage on any crop or crops, upon which any person shall perform labor in cultivating, harvesting, threshing or housing said crop, shall take such mortgage subject to, and such mortgage shall be a subsequent lien to, the lien of the person or persons performing such labor as to a reasonable compensation for such labor; *Provided*, That the interest in any crop of any lessor or lessors of land where the premises are leased in consideration of a share in the crop raised thereon is not subject to such lien."

In *Devereaux Mtg. Co. v. Walker*, 46 Ida. 431, 268 Pac. 37, it is held that where a lease is for share of crops the landlord and tenant are tenants in common as to the crops growing and grown, even before division and settlement. The interest of each is ownership in the share stipulated in the lease. This ownership is the interest contemplated by the last clause of C. S., sec. 7372. The further provisions of the lease providing a lien on the tenant's share are only an unrecorded written lien for advancements or shortage which by virtue of the forepart of C. S., sec. 7372, *supra*, would be subject to the laborer's lien on the tenant's share even if executed with the formality of a mortgage and filed of record.

The amount of barley, oats or wheat taken over by appellant is immaterial, for the value of half the hay taken by appellant exceeded the amount of the lien.

Where right of farm laborer's lien arises by virtue of work on several different crops in a season's farm operations the laborer has a right to demand that such lien be

enforced against the whole or any part of such crop or crops. (Chap. 33, sec. 7373c, Sess. Laws 1923.)

■ Having appropriated a crop which was subject to the labor lien, and of greater value than the amount of the lien, the appellant was liable to a personal judgment in favor of the claimant for the amount of the lien. (*Twin Falls Bank & Trust Co. v. Weinberg*, 44 Ida. 332, 257 Pac. 31, 54 A. L. R. 1527; *Adams v. Caldwell Milling etc. Co.*, 33 Ida. 677, 197 Pac. 723; *Backman v. Douglas*, 46 Ida. 671, 270 Pac. 618.)

The judgment should be modified to total $357.60, instead of $389.88, because one-fifth instead of one-eighth of the total labor, plus $18.00 for six days of substitute labor, should have been deducted. The cause is remanded with directions to modify the findings and judgment as herein directed. Costs to respondent.

Budge, Givens and Varian, JJ., concur.

Petition for rehearing denied.