(March 3, 1890.)

## LEWISTON NATIONAL BANK v. MARTIN, SHERIFF.

[23 Pac. 920.]

CHATTEL MORTGAGE—ATTACHING CREDITORS.—Under the laws of Idaho a mortgagor may retain the possession of the mortgaged chattels as against attaching creditors by recording the mortgage as provided by statute.

ATTACHING CREDITORS' RIGHTS.—Possession of a stock of merchandise by the mortgagor, with power to sell and retail the same, without requiring the proceeds to be applied to the payment of the debt due the mortgagee, is void as to attaching creditors of the mortgagor.

APPEAL from District Court, Kootenai County.

Albert Hagan, for Appellant.

A judgment based upon findings which do not determine all the issues raised by the pleadings is a decision against law, for which a new trial may be had. (*Knight v. Roche,* 56 Cal. 15.) A chattel mortgage reserving the right to dispose of the goods in the usual course of trade is void, and taking possession thereafter by the mortgagee will not cure the fraud. (*Wells v. Langbein,* 20 Fed. 183; *Chenery v. Palmer,* 6 Cal. 120, 65 Am. Dec. 493; *Delaware v. Ensign,* 21 Barb. 85; *Parshall v. Eggert,* 54 N. Y. 18; *Blakeslee v. Rossman,* 43 Wis. 116; *Stein v. Munch,* 24 Minn. 390.) A mortgage of a stock of goods, such as is usually kept for sale in the particular trade of the mortgagor, with provision that the mortgagor may retain possession, and use and enjoy the mortgaged property, is void on its face as to other creditors of the mortgagor; and where the mortgagee knowingly allows the mortgagor to sell the goods, and appropriate the proceeds to his own benefit, the mortgage will be void as to such other creditors, independent of any such provision. (*Davenport v. Foulke,* 68 Ind. 382, 34 Am. Rep. 265; *Peiser v. Peticolas,* 50 Tex. 638, 32 Am. Rep. 621; *Lund v. Fletcher,* 39 Ark. 325, 43 Am. Rep. 270.)

Philip Tillinghast and Hawley & Reeves, for Respondent.

When the mortgage on its face does not grant any power
to the mortgagor to sell or dispose of the mortgaged property,.
its terms and conditions cannot be contradicted or varied by
an unwritten agreement or understanding of the parties had
at the time or contemporaneously with its execution. (*Berthold
v. Fox;* 13 Minn. 501 (Gill. 462), 97 Am. Dec. 243; *Chenery v.
Palmer,* 6 Cal. 122, 65 Am. Dec. 493; *Adair v. Adair,* 5 Mich.
204, 71 Am. Dec. 779.) Statutes providing for the recording
of mortgages of personal property are the substitute for posses-
sion by the mortgagee, and repel all imputation of fraud which
would arise from the want of it. (Jones on Chattel Mort-
gages, sec. 380; *Berson v. Nunan,* 63 Cal. 550; *Bullock v. Will-
iams,* 16 Pick. 33; *Forbes v. Parker,* 16 Pick. 462; *Shurtleff v.
Willard,* 19 Pick. 202; *Hughes v. Cory,* 20 Iowa, 399; *Torbert
v. Hayden,* 11 Iowa, 435; *Smith v. Moore,* 11 N. H. 55.) The
assignee of a mortgage takes it subject to the equities between
the parties of which he had notice, either from the mortgage
itself or from other sources. (*Croft v. Bunster,* 9 Wis. 503;.
*James v. Morey,* 2 Cow. 296.)

SWEET, J.—On the thirty-first day of December, 1887,.
James McGrail executed and delivered to S. R. Smith a chat-
tel mortgage, as security for three promissory notes, one note
for $319.71 and two for $717.95 each—the first note payable
sixty days after date, and the two latter payable seven months
after date—said notes bearing even date with the mortgage
above mentioned. The mortgaged property consisted of the
contents of a drugstore, including the fixtures thereof, and an
apparatus for bottling soda. Among other provisions in said
mortgage contained we find the following: "Until default be
made in the payment of said sums of money, the said party
of the first part, his administrators or assigns, may remain
and continue in the quiet and peaceable possession of the said
goods and chattels, and in the free and full use and enjoyment
of the same." On January 15, 1888, the mortgagee, Smith,
transferred said notes and mortgage to plaintiff herein, the Lew-
iston National Bank. On March 2, 1888, McGrail sold the
entire stock of goods then on hand to the mortgagee, S. R.
Smith, who immediately took possession of the same, and car-

ried on a retail drug business from said stock of goods, together with such additional purchases as he may from time to time have added thereto, until the twenty-sixth day of May, 1888, when, in an action wherein Porter & Co. were plaintiffs and said mortgagor and mortgagee, McGrail and Smith, were defendants, a writ of attachment was issued, under and by virtue of which defendant and appellant, William Martin, as sheriff of Kootenai county, took possession of the goods, wares and merchandise in said store. The action brought by Porter & Co. was prosecuted to a judgment in the probate court of said county; and thereupon an execution was issued under and by virtue of which, on the twentieth day of August, 1888, defendant, as sheriff aforesaid, proceeded to sell the contents of said store seized by him under the said writ of attachment at the time said action was commenced. On the 11th of September, 1888, the Lewiston National Bank, in an action against said McGrail, obtained a judgment in the sum of $1,623, and an order for the sale of the goods, wares and merchandise described in said mortgage, adding, as a further description thereto, as follows: "Being the property that was in said store on December 31, 1887." Defendant returned said execution, with an indorsement thereon to the effect that, after due and diligent search, he was unable to find the goods and chattels described therein, save and except the said bottling apparatus, which he had seized and sold for the benefit of plaintiff. Thereupon plaintiff brought an action against the defendant herein, the said sheriff, for the sum of $1,623.31, the alleged value of the goods described in said mortgage. In its complaint plaintiff avers that, by reason of defendant's failure to seize and sell said goods, or, in other words, that by reason of defendant's seizure and sale of said goods under and by virtue of the attachment and judgment above set forth, the plaintiff was damaged in the amount specified, and asked judgment therefor. Defendant, answering the complaint, sets forth the facts already detailed herein, and asks that plaintiff's action be dismissed. Plaintiff obtained judgment in the lower court for the sum above set forth, and defendant forthwith appealed to this court.

The question presented to this court is as follows: Is a mortgage on the goods, wares and merchandise of a store, under the terms of which the mortgagor continues in possession of said goods, doing a retail business from day to day, valid, as against the attaching creditors of the mortgagor, in the absence of a provision in said mortgage to the effect that the proceeds of said business shall be applied to the payment of the debt due from the mortgagor to the mortgagee? The appellant contends that such a mortgage is not valid as against attaching creditors, and that, in the absence of a statutory provision on the subject, it is fraudulent *per se.* Under the common law, a chattel mortgage of personal property was void, unless the possession of said property was retained by the mortgagee. In many instances, this provision of the law served to prevent the use of many kinds of personal property as security; hence it was that the recording statutes were enacted, and under those provisions the mortgagor was enabled to pledge personal property as security for a debt, and retain possession thereof, provided the mortgage thereon be duly recorded. In common with very many of the states, the legislature of Idaho adopted the recording statute; and under its provisions the mortgagor may give a chattel mortgage upon his property and retain possession thereof, and said mortgage will protect the mortgagee against the attaching creditors of the mortgagor, in the event it is executed in accordance with the provisions of that statute, and recorded as by said act provided. (Idaho Rev. Stats., sec. 3386.) If, under our own statute, however, the mortgagor removes the property mortgaged from the county wherein the mortgage is recorded, or destroys, conceals, sells or in any manner disposes of the property mortgaged, or any part thereof, without the consent of the holder of said mortgage, he is guilty of larceny, and such sale or transfer is void. (Idaho Rev. Stats., sec. 3397.)

It is fair to infer that, while our statute contemplates the act of recording the mortgage as a substitute for the possession of the property by the mortgagee, it also contemplates that the mortgagor shall retain that property in his possession, except the mortgagee permit him to remove or sell the same. That is

as far as our statute goes, and to this extent only do the laws of our territory cover the case at bar. By the decisions of various states, and by a large majority of them, whenever the mortgagee agrees with the mortgagor that the latter may sell and dispose of the goods mortgaged, without a further agreement to the effect that the proceeds of the sale shall be applied to the payment of the debt due from the mortgagor to the mortgagee, then the recording of said mortgage ceases to protect the mortgagce from the attaching creditors of the mortgagor. In some of the states, a provision in the mortgage to the effect that the mortgagor may dispose of the goods in the usual course of trade is held to be *prima facie* evidence of fraud. In this state the fraudulent intent must be proven. In the absence of a statute of that character, the best authorities are to the effect that such a mortgage is utterly void with respect to the creditors of the mortgagor. The recording act was simply intended to serve as a substitute for possession on the part of the mortgagee. It was formulated in response to the necessities of the commercial world, and to extend and multiply the sources of security for business purposes. Being simply a substitute for possession (and it was never claimed to be anything more), it will not cover any stipulation that might, and doubtless would, in many instances, be resorted to as a shield to protect fraudulent transactions or defeat honest creditors. In *Robinson v. Elliott,* 22 Wall. 524, the court, in discussing precisely the question now at bar, and under a statute very much the same as our own—practically the same—uses the following language: "We are not prepared to say that a mortgage, under the Indiana statute, would not be sustained, which allows a stock of goods to be retained by the mortgagor and sold by him at retail for the express purpose of applying the proceeds to the payment of the mortgage debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors; but there are features ingrafted on this mortgage which are not only to the prejudice of creditors, but which show that other considerations than the security of the mortgagees, or their accommodation even, entered into the contract. Both the possession and right of disposition remain with the mortgagors.

They are to deal with the property as their own, sell it at retail, and use the money thus obtained to replenish their stock. There is no covenant to account with the mortgagees, nor any recognition that the property is sold for their benefit. Instead of the mortgage being directed solely to the *bona fide* security of the debts then existing, and their payment at maturity, it is based on the idea that they may be indefinitely prolonged." This case is directly in point.

Dr. McGrail was a witness in this case, and, without objection, explained what was meant by the free use of the goods, given him by the terms of the mortgage. That use was to carry on a retail drug business, and, no doubt, his position with the bank, or the position of Smith with the bank, would have been secure so long as the business seemed to be well conducted, and interest on the notes was promptly paid. In *Lyon v. Bank,* 29 Fed. 578, after an exhaustive review of the question now under consideration, the court held that the inference of fraud is an inference of law. The decision from 22 Wall., before referred to, is binding upon this court, and has, we think, been followed by a majority of the United States courts although the United States courts have been very largely influenced by the practice prevailing in the state wherein the question happened to arise. In the absence of a statute on the subject, we are heartily in sympathy with the line of authorities holding that possession of a stock of merchandise by the mortgagor, with power to sell and retail the same, without requiring that the profits shall be applied to the payment of the debt due to the mortgagee, is absolutely void as to the attaching creditors of the mortgagor. The rule laid down in *Robinson v. Elliott,* which we follow in this case, is a healthful doctrine for any state engaged in rapidly developing its resources, and necessarily establishing its credit. It closes one of the most dangerous avenues to fraudulent practices, and, what follows, injurious effects upon the business character of the state and the honest efforts of *bona fide* business men. The judgment of the lower court is reversed and vacated, and a new trial ordered.