(No. 21996.—

THE MAXCY-BARTON ORGAN COMPANY, Defendant in Error, *vs.* THE GLEN BUILDING CORPORATION, Plaintiff in Error.

*Opinion filed February 23, 1934.*

HADLEY, WEAVER & WOODWARD, (CHARLES W. HADLEY, PALMER LEREN, and WILLIAM C. ATTEN, of counsel,) for plaintiff in error.

CHURCH, HAFT, ROBERTSON, CROWE & SPENCE, and SAMUEL J. HOWE, (EGBERT ROBERTSON, of counsel,) for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

On the 23d day of April, 1931, the Glen Building Corporation, plaintiff in error herein, (hereinafter called the defendant,) recovered a judgment in the DuPage circuit

court against Edward D. McLaughlin and John Michalopoulos for $4100 and costs. An execution issued on the judgment was levied by the sheriff of DuPage county on April 27, 1931, on a Barton pipe organ, with accessories and attachments belonging thereto. The Maxcy-Barton Organ Company (hereinafter called the plaintiff) shortly after such levy instituted a proceeding for the trial of the right of property in the county court of DuPage county. The cause was there heard without the intervention of a jury. A judgment was rendered in favor of the defendant. On the hearing in the Appellate Court that court reversed the judgment of the county court and did not remand the cause but entered judgment in favor of the plaintiff and against the defendant. No finding of the ultimate facts was incorporated in the judgment of the Appellate Court. The defendant petitioned this court for writ of *certiorari,* which was granted. The writ was awarded and the cause is now here for review.

No propositions of law were presented by either party on the trial in the county court, neither did either party demur to the evidence or make any motion for a finding in its favor.

It is urged by the plaintiff, inasmuch as the defendant did not in the trial in the county court demur to the evidence or make a motion at the close of the evidence for a finding in its favor and did not present any propositions of law, and since no question arose on the pleadings, that the only questions open to review in this court are the rulings of the Appellate Court with respect to the admissibility of evidence. In support of this contention of plaintiff it cites the cases of *Pressed Steel Equipment Co.* v. *Thornburgh Pressteel Co.* 312 Ill. 359, *National Can Co.* v. *Weirton Steel Co.* 314 id. 280, and *Foreman Trust and Savings Bank* v. *Bartlett,* 324 id. 238. These cases are not in point. In each of the cases cited the judgment of the trial court was affirmed by the Appellate Court, and on review in this

court we held that inasmuch as the defeated party in the trial court had not in any of the recognized methods preserved questions of law for review, this court in its inquiry was limited to questions of pleadings and rulings with respect to evidence and instructions. In the present case the successful party in the litigation in the trial court was defeated in the Appellate Court and a final judgment was there rendered against it. In this situation this court may review the record to determine whether the Appellate Court has correctly applied the law, notwithstanding the fact that the victorious party in the trial court did not there demur to the evidence, make a motion for a finding in his favor or submit propositions of law to the trial court. Where the law has been applied improperly, even though the ultimate facts are found by the Appellate Court and recited in its final judgment, this court has the power and authority to review such judgment of the Appellate Court and enter the proper judgment here. *Rothwell* v. *Taylor,* 303 Ill. 226; *Sellers* v. *Thomas,* 185 id. 384.

The plaintiff is a Wisconsin corporation. Its corporate name was formerly Bartola Musical Instrument Company. Its corporate name was later changed to Maxcy-Barton Organ Company. On June 11, 1926, the plaintiff, as the vendor, entered into a written contract with Edward D. McLaughlin and John Michalopoulos, who are the execution debtors above named, as vendees, providing for the purchase by the vendees of an organ to be installed by the plaintiff in the Glen Theater at Glen Ellyn, Illinois. The purchase price was $12,000, payable $1200 upon shipment of the organ, $1200 upon the installation thereof, $200 per month for the first twelve months, $250 for the next twelve months, $300 per month for the next five months and $2700 on the thirtieth month. The deferred installments drew interest at the rate of six per cent per annum from the date of the installation of the instrument. The contract further provided that the purchasers, upon the

installation of the organ, would give their promissory notes to the vendor for the remaining payments, bearing interest at six per cent. The contract contained this statement: "Said second party further agrees that it will execute and deliver such other and further papers as may be proper or necessary to give full legal force and protection hereto in said State where such instrument is to be installed." The contract also provided that the title to the property should remain in the plaintiff until the payments provided for in the contract were made. The contract was never recorded.

Upon the trial the general manager of the plaintiff testified as its witness that he superintended the installation of the organ, and that $5500 had been paid on the purchase price, which had been paid in installments, the last installment having been paid on December 6, 1928. He identified the signatures to the contract above mentioned. The plaintiff also proved as a part of its case in chief, by the evidence of a brother of Michalopoulos, that neither of the purchasers on February 15, 1927, was a resident of Du-Page county but that each was then and there a resident of Cook county. The plaintiff offered in evidence the contract for the sale of the organ and rested its case. The defendant then called the same general manager as its witness and over the plaintiff's objections proved that the execution debtors gave a series of thirty notes, aggregating $9600, for the unpaid purchase price of the organ, which notes were secured by chattel mortgage made by the purchasers; that there was also an extension agreement made by the plaintiff extending the time of the payment of the chattel mortgage and a further extension agreement made about January 26, 1931. This same witness further testified that his company installed only the one organ for the execution debtors and had no chattel mortgage from them on any other organ.

At the conclusion of the testimony of the general manager of the plaintiff, after he had testified as a witness

called by the defendant, the defendant gave the plaintiff's counsel oral notice to produce the notes and chattel mortgage. The plaintiff's counsel objected, stating that no sufficient notice had been given and that he did not have the documents at any place in the county. He was then asked if he would produce them, and in response plaintiff's counsel asked, in substance, when defendant desired such writings to be produced, and defendant's counsel stated that he did not put any limitation on it. He was asked if he wanted to put any such limitation on the time, and he replied that it would depend on the answer of plaintiff's counsel. The court ruled that secondary evidence might be resorted to. The defendant then offered in evidence the original record of the chattel mortgage from the recorder's office of DuPage county. The identification of the record was waived. The plaintiff objected to the admission of the record in evidence, urging that no sufficient foundation had been laid for secondary evidence, no sufficient notice had been given to produce the original prior to the trial, and other specific grounds. The trial court overruled the objections and admitted such record in evidence. The record showed the recording of a chattel mortgage dated February 15, 1927, made by Edward D. McLaughlin and John Michalopoulos, of the city of Glen Ellyn, county of DuPage, and State of Illinois, to the plaintiff, upon the above mentioned organ, with all the accessories and attachments, to secure the payment of $1200 due on the installation of the organ, and thirty promissory notes dated January 31, 1927, for the aggregate sum of $9600, maturing serially, monthly, and bearing interest as provided by the terms of the contract hereinbefore mentioned. The chattel mortgage was acknowledged before a justice of the peace of the town of Milton, in DuPage county, on March 3, 1927, and filed for record in the recorder's office on the same day. The chattel mortgage, amongst other things, stated that the mortgagors "doth

hereby grant, sell, convey and confirm unto the said Bartola Musical Instrument Company," etc. Annexed to the chattel mortgage there appeared the affidavit of the two mortgagors signed and sworn to by them under date of March 3, 1927, in which affidavit they stated that they were the owners of the goods and chattels described in the chattel mortgage; that the same were free of all liens and encumbrances except the chattel mortgage; that by and under the representations made in the affidavit they had obtained the loan of $10,800, to secure the payment of which, with interest, the chattel mortgage was given.

Over substantially the same objections the defendant offered in evidence an affidavit of the president of the plaintiff, subscribed and sworn to before a notary public of Winnebago county, Wisconsin, under date of October 8, 1929, in which it was stated that the plaintiff is the mortgagee in said chattel mortgage recorded in the recorder's office of DuPage county, made by the execution debtors; that the amount due thereon was $6450, with interest at six per cent from January 31, 1927, and that the time of payment was extended on such balance until the 31st day of October, 1930. The court received this record subject to the objection. Leave was given the defendant to substitute a certified copy of the record. The defendant offered in evidence the record of an instrument headed "Extension agreement of chattel mortgage," which instrument was made under date of January 26, 1931, and filed for record February 4, 1931, in the recorder's office. This instrument purports to be made by the plaintiff and the two execution debtors, and recited that the debtors desired an extension of the indebtedness by delivering to the plaintiff a series of eighteen notes, seventeen in the principal sum of $50 each, and another note, being the 18th, in the sum of $7364, all dated January 26, 1931, and to mature on the 26th day of each and every month thereafter until all the notes had been paid, and that this extension was

agreed upon by the parties. This writing further stated that nothing contained therein should be deemed to modify the terms of the chattel mortgage hereinbefore mentioned unless such modification was expressly contained in the present instrument. The trial court received the record subject to the objection made. No ruling was ever obtained from the trial court as to whether the record of these two last named instruments was competent. The Appellate Court in its opinion held that none of the records offered in evidence were competent; that objections thereto should have been sustained; that in that condition of the record the contract by which the plaintiff claimed ownership of the organ and its accessories and attachments was conclusive upon the parties.

It is earnestly insisted by the plaintiff that the trial court erred in permitting certain cross-examination of the general manager while he was a witness for the plaintiff. The trial was before the court without a jury. Later the defendant called the general manager as its own witness and proved these same facts from him that had been obtained upon cross-examination, therefore it is a moot question as to whether such cross-examination was proper or improper in that condition of the record.

It is urged by the plaintiff that the trial court erred in the admission in evidence of the record of the chattel mortgage and the record of the two alleged extensions of such chattel mortgage. The two extensions of the chattel mortgage were received subject to the objections made against them. These two instruments were not competent. The purported extension verified under date of October 8, 1929, was not executed by the mortgagors, was not acknowledged, no notice was given to produce the original document, and under the showing made no sufficient foundation was laid for its admission in evidence. The supposed extension agreement or contract bearing date of January 26, 1931, was not entitled to be admitted in evi-

dence. No notice was given to produce the original of this instrument. It was not acknowledged before any officer authorized to administer oaths or to take acknowledgments. The presumption is that the trial court considered only such evidence as was competent and proper. The two instruments purporting to be extensions of payment were not necessary to a proper decision of the case.

We now come to the question of whether the trial court erred in the admission in evidence of the record of the chattel mortgage and the affidavit of the mortgagors attached thereto. It is claimed by the plaintiff that in the admission of this record in evidence the trial court committed prejudicial error.

Section 4 of chapter 95 (Cahill's Stat. 1933, p. 1876; Smith's Stat. 1933, p. 1908;) provides that a mortgage of personal property, acknowledged as provided by the act, shall be admitted to record by the recorder of the county in which the mortgagor resided at the time when the instrument was executed and recorded. Section 5 provides as follows: "A copy of any mortgage or other instrument, acknowledged, filed and recorded as aforesaid, including any affidavits annexed thereto, in pursuance of this chapter, certified by the proper recorder, from the records thereof, and also any copies of such affidavits filed with the officer before whom such mortgage or other instrument was acknowleded, or his successor in office, in pursuance of this chapter, may be read in evidence in like cases, and upon the same conditions as copies of deeds and conveyances of land so certified."

Section 35 of chapter 30 (Smith's Stat. 1933, p. 699; Cahill's Stat. 1933, p. 695;) provides, in substance, amongst other things, that where it appears to the satisfaction of the court that a deed or mortgage of or concerning any lands is lost or not in the power of the party wishing to use the same, the record, or a transcript thereof, certified by the recorder in whose office the instrument is recorded, may

be offered in evidence without further proof. Section 36, so far as applicable here, provides, in substance, that on the trial of a cause, where any party to such cause, or his agent or attorney, shall orally in court, or by affidavit to be filed in the cause, state that the original deed or writing concerning lands, which has been acknowledged according to law and which is required or entitled to be recorded, is lost or not in the power of the party wishing to use it on the trial to produce the same, the record of such instrument, certified by the recorder in whose office the same may be recorded, may be read in evidence with like effect as though the original was produced and read in evidence.

It is contended by the defendant that it was not necessary in this case for it to have given any notice to produce the original chattel mortgage or make any showing as to where the original was; that, since the mortgage was of record and had expired, the plaintiff must have known that it was charged with the possession of the instrument, and it was evident that it was necessary for the defendant's case that the same be produced on the trial. There is authority for this proposition. (*Bowman* v. *Wettig,* 39 Ill. 416; *Cummings* v. *McKinney,* 4 Scam. 57; 2 Wigmore on Evidence, p. 1432.) Where the writing upon which the opposite party to the litigation must base his case or defense thereto is in the possession of his opponent and it is evident that the defendant will base his defense or case on such writing, notice to produce such writing during the course of the trial is sufficient. 10 R. C. L. p. 919.

The record in this case showed a chattel mortgage, and even if we should consider the alleged extensions, (which we do not,) the chattel mortgage had long since expired by its terms prior to the levy of the execution on the chattels in question. The contract by which the plaintiff purported to retain title to the organ was not of record, and it would be evident, in a case of this nature, to the party

claiming ownership by the unrecorded conditional sales contract, that the chattel mortgage would be very necessary for the defendant to make out his case or defense. It was clearly apparent from the proof made in the record that the chattel mortgage was not in the possession of the defendant and that it was not in its power to produce it and that the chattel mortgage was in the possession of the plaintiff or its attorneys at the time of the trial of the case. The law of this State is, that whatever shall be sufficient evidence that the original is not in the party's power to produce must necessarily depend very much upon the circumstances of each particular case and is in some measure addressed to the discretion of the court trying the case. (*Newsom* v. *Luster,* 13 Ill. 175.) Moreover, the chattel mortgage was only collateral to the issues in the case. No party was undertaking to enforce the chattel mortgage. We are of the opinion that the defendant laid a sufficient foundation for the introduction in evidence of the record of the chattel mortgage and the affidavit annexed thereto.

It is further ingenuously and ably argued by the plaintiff, that notwithstanding this matter the proof showed that the mortgagors did not, at the time they made the chattel mortgage, reside in DuPage county but resided in Cook county; that the chattel mortgage should have been recorded in Cook county and was not properly recorded in DuPage county, and that, therefore, the record or certified copy thereof does not come within the purview of the statute and was not admissible in evidence. The chattel mortgage specifically stated that both of the defendants resided in the city of Glen Ellyn, DuPage county, Illinois, and was acknowledged before a justice of the peace of that county. It showed upon its face that it was lawfully entitled to record in DuPage county. It was not contemplated by the statute, where an instrument shows upon its face that it is entitled to record in a given county, that the recorder should conduct an inquiry for the purpose of determining

whether such instrument, when presented for record, is entitled to record in his county. The recorder is not a judicial officer. The recorder properly recorded the instrument when it was presented to him for record. He had no alternative.

It is contended by the plaintiff that there was no evidence in the record that the chattel mortgage had ever been accepted by the plaintiff. The evidence did show that the chattel mortgage was in the possession of the plaintiff or its attorneys at the time of the trial. This was more than four years after the chattel mortgage had been executed. The evidence proved that the chattel mortgage had been accepted by the plaintiff. In addition to the evidence of the possession of such instruments over such long period of time, the execution, acknowledgment and recording of the chattel mortgage raised the presumption of its acceptance by the mortgagee and were *prima facie* evidence of delivery. (*Talty* v. *Schoenholz,* 323 Ill. 232; *Stanforth* v. *Bailey,* 344 id. 38; *Hathaway* v. *Cook,* 258 id. 92.) The trial court did not err in admitting in evidence the record of the chattel mortgage, and the affidavit annexed thereto, made by the mortgagors.

Two principal grounds are urged by the defendant for the reversal of the judgment of the Appellate Court and the affirmance of the judgment of the county court: (1) That the plaintiff by accepting the chattel mortgage released to the execution debtors any title to the chattels, which was reserved in the plaintiff by the conditional sales contract, and that the chattel mortgage was void as to the execution creditor; and (2) that if the conditional sales contract was still effective notwithstanding the making and delivery to and acceptance of the chattel mortgage by the plaintiff, it was the duty of the plaintiff to have taken possession of the chattels under the conditional sales contract within a reasonable time after the maturity of the indebtedness recited in the contract, and that the failure of the plaintiff

to take such possession constitutes a fraud as to the execution creditors of the vendees. In the view we take of the case it will not be necessary to pass on the second question of the defendant.

It is claimed by the plaintiff that inasmuch as the contract provided that the purchaser of the organ should give such other and additional security as might be deemed necessary to protect the vendor's interest, it is not estopped to assert its title to the property under the conditional sales contract notwithstanding the fact that it accepted such chattel mortgage. Paragraph 1 of section 20 of chapter 121½ (Smith's Stat. 1933, p. 2559; Cahill's Stat. 1933, chap. 121a, sec. 20, p. 2465;) provides as follows: "(1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer."

The contract of sale provided that the title to the property should remain in the plaintiff until the property was paid for. Prior to the writing of section 20 in the Uniform Sales act this court was committed to the doctrine that where a party, by means of a written contract but without notice to the world, undertakes to reserve the real ownership of chattels in himself but permits the ownership to be in another, the law will postpone the rights of the former to those of the execution creditor against the ostensible owner of the chattels. The reason of the rule was, that to permit the ostensible owner of such chattels to be in possession of the same as the apparent owner thereof was to injure third persons by giving false credit to the apparent owner as the usual, natural and probable

result of the transaction. *Drain* v. *LaGrange State Bank,* 303 Ill. 330; *Chickering* v. *Bastress,* 130 id. 206; *Lucas* v. *Campbell,* 88 id. 447.

It is suggested by the plaintiff that the original transaction between the parties as set forth in the written contract constituted a bailment. We do not agree with this position. The vendees in the written contract were not obligated to return the organ in its original condition as received by them or in an altered form, but could discharge their full obligation to the plaintiff by the payment of the purchase price named in the contract. The true rule as applied to bailments is, that when the original chattel delivered is to be returned in the same or an altered form the title does not pass but the transaction constitutes a bailment with the title in the bailor, but if the transaction as made by the contract between the parties does not require the party receiving the chattel to return the identical chattel in its original or altered form but permits the possessor to return another chattel of equal value or to pay the money value thereof, the relation of debtor and creditor is created and the title to the property passes to him and is in him. *Lonergan* v. *Stewart,* 55 Ill. 44; *Chickering* v. *Bastress, supra; People* v. *Wildeman,* 325 Ill. 99.

Notwithstanding the holdings in some other jurisdictions that contracts of like purport with the contract herein create the relation of bailor and bailee, such holdings are in conflict with the decisions of this court, and we are not disposed to depart from such decisions.

The intentional acceptance by the purported owner of the chattels, under title reserved by the terms of a conditional sales contract, of a chattel mortgage upon the same property from his debtors, is incompatible with the claim of title to the same chattels under the conditional sales contract where such chattel mortgage is made and delivered subsequent to the making and delivery of such conditional sales contract. Certainly the plaintiff would not have ac-

cepted an affidavit made by the mortgagors co-incident with the execution of the chattel mortgage and annexed to it, as was done in this case, to the effect that such mortgagors were the actual owners of the property in question and that the same was free of all liens and encumbrances excepting the lien or encumbrance created by this particular chattel mortgage, unless such statement of ownership was true. The plaintiff would neither deliberately encourage nor permit such false swearing in any transaction to which it is a party. Both contracts could not be effective at the same time. The conditional sales contract involved the retention of title in the vendor; the chattel mortgage the vesting of title in the vendee. The parties to the conditional sales contract could by its terms make an absolute sale of the chattels if they so decided. When the chattel mortgage was made and accepted the conditional sales contract expired. The acceptance by the plaintiff of the chattel mortgage subsequent to the execution and delivery of the conditional sales contract was an election by the parties to the conditional sales contract to treat the conditional sale as absolute, and the title to the chattels was thereby vested in the vendees. The relation of debtor and creditor was created, with the title and ownership of the chattels in the purchaser under the original contract. (*Premier & Potter Printing Press Co.* v. *Fuller*, 294 Fed. 451, C. C. A. 2d Cir.; *Crewson* v. *Commercial Investment Trust, Inc.* 250 Pac. 521; *Manhattan Mills and Cement Manf. Co.* v. *Allis Manf. Co.* 54 Pac. 689; *International Harvester Co.* v. *Threlkeld*, 44 S. W. (2d) 182; *Buckeye Cotton Oil Co.* v. *Westerfield*, 54 id. (2d) 295; *Aultman* v. *Silha*, 85 Wis. 359, 55 N. W. 711; *Nordone* v. *Austin Drainage Excavator Co.* 184 N. Y. Supp. 309.) The acceptance by the plaintiff of the chattel mortgage, and the affidavit annexed thereto, estopped it from denying that the title and ownership to the organ, its accessories and appurtenances, was in the execution debtors. *Trustees of*

*Schools* v. *Wilson,* 215 Ill. 352; *Second Nat. Bank* v. *Gilbert,* 174 id. 485; *Jeffery* v. *Robbins,* 167 id. 375.

The question remains whether the chattel mortgage of the plaintiff was, as against the defendant, an execution creditor, a valid and subsisting lien. The proof made by the plaintiff in the trial of the case, which proof is not contradicted, shows that the mortgage was not acknowledged and recorded in compliance with the statute. It is not claimed that any possession of the property was taken by the plaintiff under its chattel mortgage prior to the levy of the execution on the chattels. The law of Illinois has always been that if the mortgagee in a chattel mortgage neglects to reduce the property to possession upon the maturity of the mortgage, or within a reasonable time thereafter, to be determined by the circumstances of the parties, he loses his lien as against the rights of third persons, and that, as affecting the interests and liens of the latter, the mortgage becomes a void instrument. (*Shannon* v. *Wolf,* 173 Ill. 253; *Atkins* v. *Byrnes,* 71 id. 326; *Burnham* v. *Muller,* 61 id. 453; *Constant* v. *Matteson,* 22 id. 546; *Reed* v. *Eames,* 19 id. 594.) Where a chattel mortgage matures by its terms and the mortgagee does not take possession of the chattels covered thereby within the ninety days, now fixed by statute, after the date of maturity thereof, third persons have a right to assume that the mortgage debt is paid and to deal with the mortgagor as though the property were free of the lien. Construing the chattel mortgage most favorably to the plaintiff, it matured on the 15th day of August, 1929. Even if we were to consider the supposed extensions thereof, the record of which extensions was offered in evidence but which was not properly received in evidence, the chattel mortgage would have been due more than ninety days beyond the maturity as fixed by the last supposed extension thereof without the plaintiff having taken possession of such chat-

tels. Such chattels were therefore subject to the levy of the execution in favor of the defendant.

The judgment of the Appellate Court is reversed and the judgment of the county court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of county court affirmed.*