**DIAMOND NATIONAL CORPORA-TION, Appellant,**

v.

**Dale LEE, Trustee in Bankruptcy, et al., Appellees.**

**No. 18846.**

United States Court of Appeals Ninth Circuit.

June 18, 1964.

Rehearings Denied Aug. 5, 1964.

**520**

Sidney E. Smith, Scott W. Reed, Coeur d'Alene, Idaho, for appellant and cross-appellee Diamond National Corp.

Bliss O. Bignall, Jr., Coeur d'Alene, Idaho, Richards, Haga & Eberle, Boise, Idaho, for appellee and cross-appellant Dale Lee, Trustee in Bankruptcy.

Dale Clemons, Clemons, Skiles & Green, Boise, Idaho, for appellee A. Morrison Lumber Co., Inc.

Ted Eberle, Richards, Haga & Eberle, Boise, Idaho, for appellee Douglas-Guardian Warehouse Corp.

Stephen Bistline, Sandpoint, Idaho, for appellees Post Falls Lumber Co., Inc., Ed Olson and State of Idaho.

Riner E. Deglow, Spokane, Wash., Glenn Bandelin, Bandelin & Cogswell, Sandpoint, Idaho, for appellees Smith, Neu, and Linscott.

Before HAMLEY and MERRILL, Circuit Judges, and KILKENNY, District Judge.

KILKENNY, District Judge:

Presented for decision on this appeal and cross-appeal is the correctness of the District Court's judgment denying petitions for review of certain orders of a referee in bankruptcy and adopting, as those of the court, the findings and conclusions made and entered by the referee. The facts are not in serious dispute. For a number of years the appellant, Diamond National Corporation,[1] transacted business with the bankrupt, R. J. Spring Lumber Company, Inc., a corporation, engaged in the logging and sawmill business near Sandpoint, in the State of Idaho. In the summer of 1960 the indebtedness of the bankrupt to Diamond reached a figure of approximately $200,-000.00, at which time the bankrupt executed and delivered to Diamond a certain promissory note in said sum and a real and chattel mortgage to secure the same. In excess of $150,000.00 remains owing on the note. The mortgage was recorded on August 12, 1960. The validity of the recording as a chattel mortgage is in dispute.

The mortgage covered, among other things, certain machinery, furniture and fixtures and

"All logs and lumber now on hand or hereafter acquired, situated on the above described premises."

The "above described premises", being the real property leased by the bankrupt and used by it for the milling and storage of logs and lumber.

An involuntary petition in bankruptcy was filed against the bankrupt in October, 1961. During the pendency of those proceedings and on the 23rd day of January, 1962, a receiver was appointed who immediately took possession of and sold the logs, lumber, machinery, furniture and equipment then on the premises, the proceeds of the sales of which are here in

---

1. Hereafter known as Diamond.

controversy. Adjudication in bankruptcy was made on February 16, 1962.

During the course of its operations, and after recording of the mortgage, the bankrupt found it necessary to arrange for additional financing. This was secured through what is known, in the industry, as a field warehousing arrangement with Douglas-Guardian Warehouse Corporation.[2] Under this arrangement certain designated parcels or piles of lumber on the premises were designated as in the possession of Douglas and thereafter it would issue negotiable warehouse receipts to A. Morrison Lumber Company,[3] which company would thereupon loan money, on said receipts, to the bankrupt. Diamond attempted to move into possession of the property in September 1961.

Due to the fact that certain items of the property were subject to the claims of different creditors, the proceeds of the sales were established in three separate funds, as follows:

(1) The lumber warehoused to Douglas and, on which Morrison had made advances. Sales price, $30,000.-00.

(2) The logs and lumber on bankrupt's premises, not subject to the warehouse receipts mentioned in number one. Sales price, $50,000.00.

(3) Machinery, furniture, equipment and fixtures on premises. Sales price, $22,000.00.

## VALIDITY OF DIAMOND'S MORTGAGE

The solution to many of the problems presented by the appeal and the cross-appeals of a number of the appellees, depends upon the validity or invalidity of Diamond's mortgage. Consequently, our first assignment is to consider the nature, effect and duration of the lien, if any, created by such mortgage. The referee found that the mortgage was valid, even as to the shifting stock of logs and lumber, but that Diamond waived its lien in favor of Douglas and that the liens of other creditors were superior in right to that of Diamond on such property.

The validity of the mortgage is attacked by the trustee in bankruptcy and other appellees in the following areas:

(A) Diamond's failure to enforce the sales and accounting provisions of the chattel mortgage on shifting stock of logs and lumber.

(B) Diamond's failure to take possession of the property on default in payment.

(C) Diamond's failure to properly record the chattel mortgage.

## SHIFTING STOCK

(A) All parties recognize that the logs and lumber in question constitute what is known in law as a shifting stock of merchandise and that the particular logs and lumber on the premises were acquired by the mortgagor after the execution and delivery of the mortgage.

The law of the State of Idaho is controlling on extent of the lien, and the validity of the mortgage. McKenzie v. Irving Trust Co., 323 U.S. 365, 370, 65 S.Ct. 405, 89 L.Ed. 305; In re Simpson, 31 F.2d 317 (D.C.Idaho 1929) aff'd. Patnott v. Simpson & Co., 35 F.2d 840 (9th Cir. 1929); Eberly v. Dudley, 314 F.2d 8, 12 (9th Cir. 1962). Proper provisions in a mortgage creating a lien on after acquired property are recognized, as valid, by the statutory and decisional law of the State of Idaho. Section 45–107, Idaho Code. Poage v. Co-Operative Publishing Co., 57 Idaho 561, 66 P.2d 1119, 110 A.L.R. 1322; Hudson v. Kootenai Fox Farms Co., 47 Idaho 58, 272 P. 704. However, after acquired property clauses, such as here in question, are invalid insofar as applied to a shifting stock of merchandise. In re Marsh (D.C.Idaho 1931) 53 F.2d 400; Ryan v. Rogers, 14 Idaho 309, 94 P. 427; Lewiston National Bank v. Martin, 2 Idaho 734, 23 P. 920, unless the mortgage contains a proper accounting provision, In re Marsh, supra; Ryan v. Rogers, supra. The trustee in bankruptcy stands in the same position as an

---

2. Hereafter known as Douglas.

3. Hereafter known as Morrison.

attaching or execution creditor under the law of Idaho. Kettenbach v. Walker, et al., 32 Idaho 544, 186 P. 912.

■ Where the mortgagor, with the knowledge and consent of the mortgagee, remains in possession of the chattels, and with the knowledge and consent of the mortgagee sells and disposes of the mortgaged property, without applying the proceeds of the sale to the reduction of the mortgage debt, such action will invalidate and void the mortgage. Ryan v. Rogers, supra, 14 Idaho 309, 94 P. p. 428. Diamond concedes the above, but counters with the argument that the mortgage in question contains an accounting and liquidation provision[4] which, the Idaho courts recognize as valid. Lewiston National Bank v. Martin, supra. However, failure to comply with the terms and conditions of the accounting provision will invalidate the mortgage. Lewiston National Bank v. Martin, supra; Ryan v. Rogers, supra.

The undisputed testimony is that the accounting arrangement as outlined in the mortgage was abandoned by the parties shortly after its execution. At that time the parties substituted, for said accounting provisions, an agreement whereby the mortgagor would pay to Diamond an arbitrary figure of $2.00 per thousand on any and all lumber which was sold. This arrangement was later confirmed by letters. Typical of these letters, over the signature of Diamond, is the one shown in the footnote.[5] Attached to the letters was a release, signed by the bankrupt, directing Morrison Lumber Company, among other things, to release and pay directly to Diamond $2.00 per thousand on all lumber sold and delivered by the bankrupt. Conceded, is the fact that the parties never attempted to place of record the new or substitute agreement. The only accounting ever made by Spring to Diamond after that time was on the basis of the $2.00 per thousand required by the

---

4. "It is further agreed that so long as the terms and conditions of this mortgage are kept and performed by the mortgagor, it may sell and dispose of its lumber in the ordinary course of trade for cash and credit, with prompt collection of all accounts so extended, to be made as and when the same become due, provided, however, that such possession and control, and sales of lumber shall be under the supervision of the mortgagee, or such person as it may designate. The mortgagor agrees to keep a strict, accurate and detailed account of all sales of said lumber made by it, and of all cash money realized therefrom, and of all accounts contracted and received by it; said mortgagor being hereby required to keep up and replenish its stock of logs and lumber so that the business will be conducted properly both as to the said mortgagor and mortgagee; that such accounts so kept shall be rendered to the mortgagee on the 10th day of each and every month until this mortgage indebtedness shall be fully paid.

"The entire proceeds of sales and collections made by the mortgagor in said business, less the reasonable and proper amount necessary to defray the expense of operating said business, replenishing said supply of logs and lumber, are to be applied to the reduction of such indebtedness. It is further agreed that all

purchases of logs, machinery and equipment for the purpose of keeping up said business shall be kept strict account of, itemized and reported to the mortgagee; and that the same and the whole thereof shall be under the supervision and direction of the mortgagee until said indebtedness is fully paid."

5.                                   "May 26, 1961
Morrison Lumber Company
2391 SW Murray Street
Portland, Oregon
Gentlemen:

Please find enclosed a Release of Payment from the R. J. Spring Lumber Company requesting that you withhold from his lumber deliveries $2.00 per thousand to be paid to Diamond National Corporation.

We understand that you are familiar with this agreement and are willing to accommodate Mr. Spring in this matter.

We would appreciate you forwarding the payments as soon as they come to our address contained in this release.

Thank you.

                        Very truly yours,
                        DIAMOND NATIONAL
                          CORPORATION
                        Deane L. Combs
                        Division Accountant
DLC:dk
enc."

substitute agreement. There was no accounting of "the entire proceeds of sales and collections made by the mortgagor in said business, less the reasonable and proper amount necessary to defray the expense of operating said business" as required in the mortgage. The referee found that this arrangement amounted to a waiver by Diamond of its lien or right to the proceeds of the lumber sales or advances made by Douglas. The court did not make a specific finding on whether the new or substitute arrangement destroyed the lien of Diamond's mortgage on the after acquired shifting stock of logs and lumber. The record supports the referee's finding that Diamond was aware of Spring's default in payment on the mortgage after November, 1960, and from March, 1961, was fully aware of the insolvent condition of Spring, but took no action to take possession until mid-September, 1961. Diamond took no inventories of the lumber, nor did it check the books of the lumber company except on an occasion about March 23, 1961, and again on September 5, 1961.

■ As we view it, the Idaho law, in the protection of creditors, requires a provision with reference to sales and accounting, to be incorporated on a shifting stock of goods. Here a provision was so incorporated. That provision was ignored and another provision substituted. The latter provision was never incorporated in the mortgage, nor did Diamond attempt to place the same of record. The validity of Diamond's mortgage on the shifting stock of merchandise, depended on the provision in the mortgage with reference to accounting. Since the parties chose to ignore such provision, the mortgage on the shifting stock of merchandise is void.

Cauthorn v. Burley State Bank, 26 Idaho 532, 144 P. 1108, cited by Diamond, only serves to illustrate the type of compliance required by the Idaho courts before validity is recognized in such a mortgage. In that case, all funds that were due on a note for which the mortgage was security were paid over. The mortgage was not in default. The mortgagee insisted on the weekly accounting and secured payments from the proceeds of all sales. Here there is no evidence of monthly or weekly accountings in dollars and cents. On the other hand, the accounting clauses in the mortgage were completely discarded and substituted therefor was another agreement.

Neither is United States Rubber Co. v. Young, 57 Wash.2d 686, 359 P.2d 315, of any help to Diamond. It recognizes:

(1) That the agreed terms of payment must be set forth in the mortgage, and

(2) That the transaction may become fraudulent if the mortgagee knowingly permits the mortgagor to appropriate to his own use funds which should have been applied to the mortgage.

Here, the mortgage did not set forth the true agreement of the parties for the payment of an arbitrary sum of $2.00 per thousand. Additionally, the overwhelming weight of the evidence and the finding of the referee shows that Diamond knowingly permitted the bankrupt to appropriate to his own use funds which should have been applied on the mortgage.

■■ We give full recognition to the rule that where the findings of a referee are supported by substantial evidence they will not be disturbed on appeal. This rule is specially applicable where, as in this case, the order appealed from has been approved and confirmed by the district court. Costello v. Fazio, 256 F.2d 903 (9th Cir. 1958); Heath v. Helmick, 173 F.2d 157 (9th Cir. 1949). However, the rule is not applicable to a conclusion arrived at by a referee or, the district court, on a given state of facts, since in the latter case a proper conclusion from the given facts can be made by the court of appeals as well as by the referee. Costello v. Fazio, supra; Carr v. Southern Pacific Co., 128 F.2d 764 (9th Cir. 1942); Tepper v. Chichester, 285 F.2d 309, 312 (9th Cir. 1961). The evidence is not in conflict on Diamond's failure to require compliance by the bankrupt with

the accounting provisions of the mortgage, or that another arrangement was substituted therefor. Consequently, we are not bound by the referee's conclusion that the mortgage was valid as to the shifting stock of merchandise. Such conclusion was clearly in error.

■ (B) The cross-appellant and appellee, Douglas-Guardian Warehouse Corporation, challenges the validity of the entire mortgage lien on the ground that Diamond failed to take possession of the property within a reasonable length of time after it had full notice and knowledge that the bankrupt was in default and was insolvent. In support of this theory, those parties cite Babbit v. Bent County Bank of Las Animas, 50 Colo. 258, 108 P. 1003; Maxcy-Barton Organ Co. v. Glen Building Corp., 355 Ill. 228, 189 N. E. 326, 95 A.L.R. 321, and others from the same states. We do not reach this issue insofar as the shifting stock of merchandise is concerned. Already resolved is the invalidity of the mortgage on such stock. The rule stated in the cases cited has no application to the validity of the lien on the machinery, furniture, equipment and fixtures. We hold that Diamond's mortgage lien on such property was and is valid.

(C) VALIDITY OF RECORDING.

■ The trustee and Douglas challenge the sufficiency of the recording of the instrument as a chattel mortgage. That the instrument was delivered to the proper county official to be filed, indexed and recorded is admitted. Diamond called, as a witness, the county auditor, the official to whom mortgages are delivered for recording, and she produced the original chattel mortgage from the official file. The chattel mortgage in evidence is an exact copy of that produced by the auditor. Objection was made to the introduction of the instrument in evidence until it was "shown that the documents are properly indexed". The objectors contending that unless the mortgage was properly indexed it was not of record and did not constitute notice. The auditor did not have with her the index card.

The parties agreed that she might sign and file a certificate with reference to the indexing of the chattel mortgage, in lieu of her personal return. Such a certificate was filed and shows that the mortgage, when filed, was indexed under the letter "R". We must keep in mind that the only objection made to the mortgage being received in evidence was that it was not properly indexed. Now, on this appeal, other questions are raised with reference to the sufficiency of the card which was kept by the auditor. For lack of a proper objection, we pass these points. In its argument, Diamond fails to recognize the distinction between the filing and recording of the mortgage and the indexing thereof. The case of In re Labb, (W.D.N.Y.1941) 42 F.Supp. 542, 544, well illustrates this distinction. The function of an "index" is to point out the book and page where the instrument may be found. Perkins v. Strong, 22 Neb. 725, 36 N.W. 292, 295. The distinction is exhaustively treated in United States v. Cedar Valley Livestock Exchange, Inc. (N.D.Iowa 1958) 169 F.Supp. 169. The soundness of the distinction between indexing, filing and recording, so well demonstrated in these authorities, is beyond cavil. Diamond's only objection to the indexing of the instrument, as distinguished from the filing and recording to which no question was raised at the time of the trial, is that the instrument was indexed under the letter "R" rather than the letter "S". The trustee and Douglas would have us treat the corporate name R. J. Spring Lumber Company, Inc., as that of an individual and having adopted this false premise, argue that the instrument should have been indexed under the letter "S" for the surname, Spring, as used in the corporate name, rather than "R" the first letter of the corporate name. The argument is patently unsound. The personality and individuality of the surname of an individual disappears when used as part of a corporate name. Once a corporation comes into existence it acquires a legal name by which it is known and identified and by and under which it transacts business. This legal name is

the only one which can be used by the corporation. Colorado Milling, etc. v. Proctor, 58 Idaho 578, 583, 76 P.2d 438, 440. The instrument was properly indexed under the letter "R". This view conforms to the customary method of corporate indexing as used in the reports of this court. Diamond has a valid lien on $22,000.00, the proceeds of the sale of machinery, etc.

## RIGHTS OF DOUGLAS AND MORRISON

No one on this appeal questions the validity of a field warehousing arrangement such as existed between Douglas-Guardian Warehouse Corporation and the R. J. Spring Lumber Company, Inc., nor the issuance of negotiable warehouse receipts such as those issued by Douglas to Morrison. The validity of such an arrangement for the warehousing of lumber, in an open yard, has long been recognized by the courts in Idaho. Equitable Trust Co. v. A. C. White Lumber Co. (D. C.Idaho 1930) 41 F.2d 60. The referee found that Douglas took actual possession of the lumber covered by the receipts issued to Morrison and that the arrangement between Douglas and the bankrupt constituted a valid field warehousing arrangement under the Idaho law. Diamond, the only party contesting the claims of Douglas and Morrison, does not contest the correctness of the referee's findings. The nub of its contention is that its mortgage lien is prior in time and superior in right to any claim to the proceeds of the sale of the "warehoused lumber" which may exist in favor of Douglas or Morrison. Our holding that Diamond's mortgage did not constitute a valid lien on the shifting stock of logs and lumber, as against the trustee in bankruptcy, is likewise applicable to the rights and liens of Douglas and Morrison.

## SMITH–NEU CLAIM

This partnership had a contract to supply logs to the bankrupt. Within the statutory period the partnership filed a claim of lien on the logs and lumber, under the Idaho statutes. The validity of this lien is challenged on numerous grounds. The solution requires a construction of a lien statute of the State of Idaho, Idaho Code, § 45–401.[6] Idaho has never passed on the specific point, but certain of its supreme court decisions would indicate that the court would frown on the allowance of a logger's lien to an independent contractor, such as Smith-Neu. People ex rel. Heartburg v. Interstate Engineering and Construction Co., 58 Idaho 457, 75 P.2d 997; Anderson v. Great Northern Railway Co., 25 Idaho 433, 138 P. 127. At the outset it is of importance to observe the variance in language between the ordinary mechanic's or materialman's lien, as created by the Idaho legislature, Idaho Code § 45–501, and the language of the legislation before us. Contractors and subcontractors are specifically mentioned and included in the legislation creating mechanic's and materialman's liens. No such language is used in the legislation here under scrutiny. The Idaho legislation was enacted in 1893.[7] An identical statute, with the exception of the language dealing with the rights of a cook, was enacted by the Oregon legislature in 1891.[8] The Oregon legislation was taken from similar legislation in the State of Washington. North Pacific Lumber Company v. Lang, 28 Or. 246, 256, 42 P. 799. While the decisions of the Oregon and Washington Supreme Courts, in the construction of these statutes, rendered after the adoption of the legislation by the state of Idaho, are not binding on the Idaho courts, the decisions of the highest courts in those states, on this subject,

---

6. "45–401. Liens upon saw logs.—Every person performing labor upon, or who shall assist in obtaining or securing, saw logs, spars, piles, cord wood, or other timber, has a lien upon the same for the work or labor done upon, or in obtaining or securing the same, whether such work or labor was done at the instance of the owner of the same or his agent. The cook shall be regarded as a person who assists in obtaining or securing the timber herein mentioned."

7. Laws of Idaho, 1893, p. 49, Ch. 2, §§ 1, 2.

8. General Laws of Oregon, 1891, p. 117, § 1.

would no doubt be persuasive with the Idaho courts. Of great significance is the fact that the three states border each other, have great timber resources, no doubt have uniform problems and enacted the same type of, if not identical legislation. Febock v. Jefferson County, 219 Wis. 154, 262 N.W. 588, 101 A.L.R. 95; Burnside v. Wand, 170 Mo. 531, 71 S.W. 337, 62 L.R.A. 427.

It would appear that 45–401, Idaho Code, was re-enacted by the Idaho legislature in 1899, p. 147, Ch. 2, § 1, some four years after the decision construing the Washington statute, against Smith-Neu's contentions, in Campbell v. Sterling Mfg. Co., 11 Wash. 204, 39 P. 451. It has been said that on each re-enactment of a statute adopted from the laws of another state, there is acquiescence in the construction up to that time placed upon the statutes by the courts of the state from which it was adopted. Ives v. McNicoll, 59 Ohio St. 402, 53 N.E. 60, 43 L.R.A. 772.

▆▆ An examination of § 1 of Ch. 132, Washington Laws, 1893,[9] considered in the Campbell case, reveals that the logging lien statute there under scrutiny was identical with the Idaho statute here in question. The Washington Supreme Court there held that the statute made no provision for a lien in favor of a person who did not directly or indirectly perform labor upon the timber or logs. The claimant in that case, for all practical purposes, was in the identical position of Smith-Neu in this cause.

▆▆ Although we give full recognition to the general rule that statutory liens, such as the one before us, are to be liberally construed in the claimant's favor, Abernathy v. Peterson, 38 Idaho 727, 225 P. 132, 133, that rule must be applied in conjunction with its companion rule, i. e., that such legislation is to be strictly construed when it is sought to discover the one who may enjoy the status of a lienor. Timber Structures v. C. W. S. Grinding & Machine Wks., 191 Or. 231, 246, 229 P.2d 623, 25 A.L.R.2d 1358;

Kidder v. Nekoma Lumber Co., 196 Or. 409, 249 P.2d 754.

However, on the facts before us, it is of no importance whether the statute is liberally or strictly construed. Simply stated, Smith-Neu's status as independent contractors for the purchase, falling, loading, transportation and delivery of logs, places them beyond the pale of the statute.

▆▆ While we recognize that both Smith and Neu, as individuals, performed work and services in connection with securing and hauling the logs, the fact remains that the lien notice which was filed was not for this labor and service. The notice of lien, as filed, on which the partnership relies, was based on the contract to supply logs at the mill at a specified price per thousand. Necessarily included in this total contract price, is the cost of labor in falling the logs, in bucking the logs, in loading the logs, in transporting the logs, in unloading the logs and the stumpage cost of the logs themselves. Cases such as Martin v. Wakefield, 42 Minn. 176, 43 N.W. 966, 6 L.R.A. 362; Hogan v. O'Neill, 49 Wis. 169, 5 N. W. 490; Valley Pine Lumber Co. v. Hodgens, 80 Ark. 516, 97 S.W. 682; Cloud v. Warner, 157 La. 14, 101 So. 794, holding that a person qualifies for a lien, who uses his own labor and a team, wagon or other vehicle in the performance of his work, are not in point. Here, the partnership might have a valid lien if the members filed for the value of their services and equipment. This they failed to do. Precisely in point is Littlefield v. Morrill, 97 Me. 505, 54 A. 1109. The official publication of the Idaho Code recognizes that legislation on the same subject in the state of Wisconsin is comparative with that in Idaho. Our problem was presented to the Wisconsin Supreme Court, in John v. Flanner Co., 211 Wis. 424, 248 N.W. 436. The Wisconsin court called attention to the specific mention of contractors and subcontractors in other statutes creating liens. Noting the absence of such language from the legislation

9. Follows language of § 2, Act of 1877, construed in North Pacific Lumber Company v. Lang, supra.

creating a loggers' lien, the court held that such a lien was limited to work and labor performed on logs and was never intended to secure contractors performing their contracts through employees for an agreed price. Valley Pine Lumber Co. v. Hodgens, supra, recognizes that the lien is for the benefit of one who performs the labor and is not extended to one who hires the labor performed and pays for it.

McKinley v. Tice, 129 Or. 190, 276 P. 1110, is of importance. There, as here, the plaintiffs claimed that they actually performed part of the work and that the remainder of the work was performed by others who were employed by the plaintiffs for that purpose. But one lien was filed, and it included, not only a claim for the work done by each of the plaintiffs individually, but also for what had been done by other employees. Nothing appeared on the face of the lien by which a segregation could be made as to what was due to the plaintiffs or to either of them. The court held the lien invalid by reason of the notice of lien lumping together non-lienable and lienable items. The court attempted to express no opinion on the contention that the lien statute was not broad enough to cover the contract price under the logging contract there in question. Obviously, the court would never have reached the question of lienable and non-lienable items if it recognized a valid lien for the contract price. In deciding that no lien existed, the court necessarily decided that the lien claimants did not have a lien for the contract price.

█ The Idaho courts recognize and enforce the general rule that lienable and non-lienable claims cannot be lumped together and that such comingling, without segregation, invalidates the lien. Wheatcroft v. Griffith, 42 Idaho 231, 245 P. 71; Vollmer Clearwater Co., Ltd. v. Union Warehouse & Supply Co., Ltd., 43 Idaho

37, 248 P. 865; Brookbush v. Hatch Bros., 81 Idaho 228, 339 P.2d 986.

Smith and Neu's reliance on Chapman v. A. H. Averill Machinery Co., 28 Idaho 121, 152 P. 573, is misplaced. First of all the statute bears little resemblance to the one here in question. For that matter, the opinion in the Chapman case indicates that an independent contractor would not be entitled to a lien under the statute there under construction.

## CLAIM OF NORMAN LINSCOTT

█ Linscott claims this lien [10] for services rendered in connection with hauling gravel and placing the gravel on the mill yard site of the bankrupt, to facilitate the stacking of lumber for drying and to enable bankrupt to transport logs to the mill. The claimant performed personal services and worked physically in constructing bases for the stacks of lumber. The testimony would indicate that the operations of the mill in the manufacture of the lumber would not go forward without the completion of this type of work. The lien was filed on the basis of $1.00 per yard for the gravel hauled and placed in position. It is the claimant's contention that his lien is for work, labor and services performed in logging and in assisting in a logging operation under Section 45-401, supra. The factual background in Chapman v. A. H. Averill Machinery Co., supra, cited in support of the validity of the lien, bears no resemblance to the facts here presented. Additionally, the lien statute involved in Chapman was one on crops and was worded at variance with the statutes before us. By no stretch of the imagination can we find room to include Linscott within the class of persons to be benefited by a lien of this kind. Under proper circumstances his services and the delivery of such material might constitute a basis for a valid mechanic's lien for the improvement of the real property.

10. "45-402. Lien on lumber made from saw logs.—Every person performing labor upon, or who shall assist in manufacturing saw logs into lumber, has a lien upon such lumber while the same remains at the mill where manufactured, whether such work or labor was done at the instance of the owner of such logs or of his agents."
Also claims under 45-401.

That problem is not here for decision. The Linscott claim has no validity.

## STATE OF IDAHO LIEN

The State of Idaho filed a claim of lien against the non-warehoused logs and lumber. This claim, in the sum of $8,-858.52, was filed under Idaho Code 45–403, for the sales price of the timber which was cut into logs. Included in the lien was an additional claim, under Idaho Code 38–110, for the additional sum of $2,729.00 for the cost of slash disposal on the logged off premises.

During the course of the hearing it developed that the State of Idaho was paid sufficient money to satisfy this lien by a company known as Pack River Lumber Company, which had another logging contract with Smith-Neu. We hold that there is substantial evidence in support of the referee's finding, affirmed by the district court, that the application of this money to what would appear to be the payment of this lien, was erroneous. In other words, the payment should have been applied to the payment of stumpage under the Pack River contract, rather than to the payment of stumpage under the bankrupt's contract. Likewise, we find no substance to Diamond's contention that the claimed lien for slash disposal is invalid. True enough, Smith-Neu may be responsible for the cost of the burning of the slash. Nevertheless, the statute recognizes the right of the state to file such a lien. Again, the finding of the referee, affirmed by the court, is supported by substantial evidence. These findings will not be disturbed.

Diamond's argument that three-eighths of the total claim was waived, by reason of failure to assert the lien against all of the logs and lumber, rather than against the non-warehoused lumber, is supported by neither logic nor authority. The language of the lien statutes do not require the lienor to assert the lien against any particular parcel or parcels of lumber.[11] The assertion of the lien against part of the lumber, and not against the remainder, cannot be viewed as a waiver of the right to collect the entire sum due. If, in the proceedings before the referee, Diamond had demanded a marshaling of assets, the referee might have given consideration to apportioning three-eighths of the total of the lien to the warehouse fund. Its claim that the state waived three-eighths of the amount of its lien, lacks vitality.

## POST FALLS LUMBER COMPANY CLAIM

The finding of the referee, affirmed by the district court, that Post Falls Lumber Company was the owner of 44,000 board feet of the lumber on the premises and that this lumber had a value of $42.00 per thousand or a total of $1,-848.00 and that the lumber never passed into the possession of the bankrupt, the other creditors or the trustee, is supported by the record. Obviously, the finding is not clearly erroneous.

## CHANEY, ET AL.-OLSON LIENS

Diamond concedes the validity of these claims, but contends that those in excess of $600.00 should be limited to that amount by reason of the limitations mentioned in 11 U.S.C. § 104 and § 107. This specific question was not raised before or presented to the referee.

Conceded is the contention that the district judge could have exercised his discretion and examined an issue not before the referee. Rosehedge Corp. v. Sterett, 274 F.2d 786, 790 (9th Cir. 1960). This does not mean that the reviewing court, under ordinary circumstances, should not follow the referee's findings. The district judge having exercised his discretion against a consideration of this issue, his judgment will not be disturbed.

Except as herein modified the judgment of the lower court and the findings of the referee are affirmed. The cause is remanded for further proceedings in conformity with the views herein expressed.

Costs to neither appellant nor appellees.

11. Idaho Code 45–412.