**Bernard D. FLAXMAN, Appellant,**

v.

**George GARDNER, Trustee in Bankruptcy for Pride Furniture Manufacturing, Ltd., Appellee.**

**No. 19866.**

United States Court of Appeals
Ninth Circuit.

Nov. 19, 1965.

Rehearing Denied Jan. 18, 1966.

---

Martin S. Friedlander, Flaxman, Coleman, Gorman & Rosoff, Los Angeles, Cal., for appellant.

A. J. Bumb, Joseph S. Potts, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge:

In this bankruptcy proceeding the referee disapproved the accounting of Bernard D. Flaxman, pre-bankruptcy assignee for the benefit of the bankrupt's creditors, and surcharged the assignee the sum of $3,850.65 for sums paid out of the assignor's estate prior to bankruptcy. In so doing, the referee disallowed all but $500.00 of the $1,465.00 fee for an auditor's report, all but $150.00 of the $350.00 fee for an accountant's report, all but $1,366.64 of the $2,733.28 fee for the services of an auctioneer, and all but $780.32 of the $2,465.52 the assignee paid to himself for his own fee and expenses. The district court affirmed the order of the referee and Flaxman then took this appeal. We have jurisdiction under sections 24 and 25 of the Bankruptcy Act, 52 Stat. 854, 855 (1938), as amended, 11 U.S.C. §§ 47, 48 (1964).

We will first consider the disbursement of $1,465.00 for an auditor's report, all but $500.00 of which was disallowed, the assignee being surcharged for the balance.

The bankrupt is Pride Furniture Manufacturing, Ltd. (Pride). On March 22,

1961, a substantial number of the creditors of Pride met to consider their mutual problems as such creditors. They decided to obtain an audit of Pride's books in order to determine whether shortages existed and whether an involuntary petition in bankruptcy should be filed against the debtor. At that time the creditors appointed what was designated a "Creditors' Committee" and authorized Flaxman to contact Joseph S. Herbert & Co., certified public accountants, to prepare an audit.

On April 6, 1961, an assignment for the benefit of creditors was made by Pride, wherein Flaxman became assignee. Thereafter, the auditor furnished a report addressed to the Creditors' Committee, which was considered at a meeting of the Creditors' Committee on May 9, 1961. The report was prepared from the debtor's records with certain minor adjustments predicated on claims filed by creditors with the assignee. The report appears largely to be a list of payments made to creditors by Pride during the several preceding months, together with a statement of assets and liabilities with adjustments to reflect certain worthless or depreciated assets. One item shown was a possible tax refund claim against the United States in the amount of $5,603.16.

An involuntary petition in bankruptcy was filed against Pride on August 4, 1961; the date of adjudication was January 23, 1962. The trustee was appointed and qualified on February 27, 1962. The assignee's report and accounting, including a record of the disbursement of $1,465.00 to Joseph S. Herbert & Co., was filed on May 16, 1962. The audit was turned over to the trustee in bankruptcy on January 10, 1963, at the time a hearing was held on the assignee's report and accounting. Subsequent to this hearing, a $10,374.27 tax claim of the United States was reduced in the amount of $5,603.16.

The referee found that the record does not reflect that this audit was of any special benefit to the assignee. The referee further found that the audit report

was of no benefit to the bankrupt estate other than as indicated above, and that the value of such benefit was the sum of $500.00. The referee concluded, from the findings, that the payment made to Joseph S. Herbert & Co. was "excessive and improper" and Flaxman ought to be surcharged in the amount of $965.00.

The assignee's report and account was filed in the bankruptcy court pursuant to section 2, sub. a(21) of the Bankruptcy Act, added June 22, 1938, 52 Stat. 842, 11 U.S.C. § 11, sub. a(21) (1964). That subsection, among other things, confers jurisdiction upon courts of bankruptcy to require assignees for the benefit of creditors to deliver the property in their possession or under their control to the trustee in bankruptcy, " * * * and in all such cases to account to the court for the disposition by them of the property of such bankrupt * * *," with exceptions not here applicable. Section 2, sub. a(21) further provides:

"Upon such accounting, the court shall reexamine and determine the propriety and reasonableness of all disbursements made out of such property by such * * * assignee * * * either to himself or to others, for services and expenses under such * * * assignment * * * and shall * * * surcharge such * * * assignee * * * the amount of any disbursement determined by the court to have been improper or excessive; * * *."

Appellant argues that, in surcharging part of the disbursement for the auditor's report, the referee failed to apply the test stated in section 2, sub. a(21), that "improper or excessive" disbursements are to be disapproved. Instead, appellant asserts, the referee applied the more stringent test announced in 1903, in Randolph v. Scruggs, 190 U.S. 533, 538, 539, 23 S.Ct. 710, 712, 47 L.Ed. 1165, that only disbursements which " * * * tend to the preservation or benefit of the estate * * *" are to be allowed. The latter test, appellant contends, was supplanted by the "improper or exces-

sive" test, when section 2, sub. a(21) was enacted in 1938.

The referee's conclusion of law that the disbursements made for the auditor's report, and for the other questioned items, were "excessive and improper" demonstrates that the referee had the statutory test in mind. The findings of fact, however, indicate that the referee believed that pre-bankruptcy disbursements by the referee would be excessive and improper to the extent that they did not tend to preserve or benefit the estate.

█ We find nothing in section 2, sub. a(21), or in its legislative history, which precludes a referee from utilizing the Scruggs criterion in determining whether disbursements are excessive or improper. Nor has any decisional law been cited to that effect. On the contrary, cases decided since 1938 appear to rest on the assumption that "benefit to the estate" is still the proper measure to be applied. See In re Marks, 7 Cir., 267 F.2d 108; In re Paramount Merrick, Inc., 2 Cir., 252 F.2d 482.

█ It was sensible for the referee to conclude that if a particular service, ordered by the assignee, was of no benefit to the estate of the bankrupt, it would be "improper" within the meaning of section 2, sub. a(21), to charge the expense of that service to the estate. This would seem to be true regardless of whether the fee paid for such service was reasonable and therefore not "excessive."

█ In so stating, however, we recognize that certain services ordered by the assignee may be of benefit to the estate even though they do not actually result in enlargement of the estate or diminishment of the claims against it. Thus, if the trustee in bankruptcy, in the proper administration of the estate, would have required an audit such as that performed for the assignee by Joseph S. Herbert & Co., then the reasonable cost of the audit benefited the estate regardless of what the audit revealed, and, from the standpoint of the estate, was neither excessive nor improper.

This brings us to appellant's argument that even if the referee was entitled to apply the "benefit to the estate" criterion, the findings of fact to the effect that the fee for the audit, to the extent that it exceeded $500.00, was excessive and improper, are clearly erroneous.

Some of the facts relevant to this item have been stated above. Appellant also calls our attention to certain additional facts. The Creditors' Committee ordered the audit because it wanted to find out whether there was any connection between the debtor and the Hadley Furniture Company. One of the principals of the debtor company had been involved in four other insolvencies, including that of Hadley Furniture, and had served a federal prison sentence for tax evasion. The Joseph S. Herbert company had recovered a half million dollars of receivables for the trustee in bankruptcy in the Hadley Furniture matter, and the creditors of Pride were suspicious that there may have been fraud in the Pride matter also. The questioned audit, however, did not reveal any such fraud. The referee made no finding that the disbursement was excessive in the sense that it exceeded a normal fee for the work performed.

Appellant argues, in effect, that in view of the stated circumstances, the fee for the audit benefited the bankrupt's estate because, regardless of what it turned up, the audit was needed by the trustee in the proper administration of the estate.

█ The referee made no express finding as to whether the trustee would have found it necessary to order such an audit if the assignee had not ordered it. In the absence of such a finding we cannot determine whether the referee found this disbursement excessive and improper to the extent it exceeded $500.00 because no audit was needed by the trustee, or because the audit although one which the trustee would have required, disclosed only the tax refund claim. As indicated above, a partial disallowance on the latter ground would be incorrect.

The cause must therefore be remanded so that the referee may make a clarifying finding of fact on this point, and such revised conclusions of law and order, if any, as may be indicated by the additional finding.

With regard to the remaining three items, viz., the fees for an accountant's report, the fee for the auctioneer, and the fee and expenses of the assignee, the referee's partial disallowance was, in effect, on the ground that, while the services benefit the bankrupt's estate, the fees were excessive for the service rendered. Appellant contends that the referee's findings to this effect are clearly erroneous.

Examination of the record convinces us that these findings of fact are not clearly erroneous.

Reversed and remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on this appeal.