**Irving I. BASS, Trustee, Appellant,**

v.

**QUITTNER, STUTMAN & TREISTER, Appellee.**

**Irving I. BASS, Trustee, Appellant,**

v.

**GENDEL, RASKOFF, SHAPIRO & QUITTNER, Appellee.**

**Nos. 20600, 20601.**

United States Court of Appeals
Ninth Circuit.

June 21, 1967.

**56**

Bertram H. Ross, Nat Rosin, Harry Schuman, Los Angeles, Cal., for appellant.

Herman L. Glatt, Quittner, Stutman & Treister, Los Angeles, Cal., for appellees in pro. per.

Bernard Shapiro, G. Merle Bergmen, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for appellees, in pro. per.

Before DUNIWAY and ELY, Circuit Judges, and CRAIG, District Judge.

ELY, Circuit Judge:

These are consolidated appeals from two orders of the District Court, sitting as a court of bankruptcy and exercising jurisdiction conferred by section 2(a) (21) of the Bankruptcy Act, 11 U.S.C. § 11(a) (21). The challenged orders reversed determinations of the Referee that there should be no allowance of attorneys' fees to the appellees herein. The appellees are two law firms, one of which will be called Gendel, and the other Quittner. Our power of review rests upon 11 U.S.C. § 47(a).

Appellant is the trustee in bankruptcy of McDaniel's Markets, a California corporation. Pursuant to notice given to all known creditors of the future bankrupt, a meeting attended by a "substantial portion" of them was conducted on July 6, 1961. A committee of ten creditors was chosen at the meeting, and the committee selected Quittner to act as its legal counsel. At that time an offer to purchase the assets of McDaniel's Markets, made by Food Giant Markets, was pending, and the creditors in attendance contemplated that a sale could not be accomplished except through the device of a general assignment for the benefit of creditors. The Quittner firm represented the creditors' committee in negotiations looking toward such a sale from July 6th to August 3rd, 1961, when an agreement was made between Food Giant Markets, the creditors' committee, and the bankrupt corporation. On the latter date, an assignment for the benefit of creditors was made to one Engleman. Between August 3rd and the following September 15th, when an involuntary petition in bankruptcy was filed against McDaniel's Markets, the firm gave legal assistance both to the creditors' committee and to the assignee. The services related to implementation of the sale to Food Giant Markets, certain pending at-

tachments, and problems with secured creditors and landlords. Prior to September 15th, the assignee paid Quittner the sum of $5,000, which is conceded to be the reasonable value of legal services rendered by the firm from July 6th to September 15th. The Referee disallowed that disbursement in proceedings for the approval of the assignee's account, and ordered that he be surcharged in that amount. Pursuant to an agreement to hold the assignee harmless in the event that the item should be disallowed, Quittner repaid the $5,000 to the trustee in bankruptcy. On review, the district judge reversed the Referee's determination and ordered that the fee be restored to Quittner.

The Gendel firm had acted as attorney for McDaniel's Markets prior to the assignment for the benefit of creditors and was familiar with pending and potential litigation in which the corporation was involved. On recommendation of the creditors' committee, the assignee employed Gendel to act in connection with pending litigation, to obtain releases of attachments in certain actions then pending, and to perform an analysis of complicated leasing agreements, an analysis necessary for the administration of the assignment. Gendel conducted negotiations and filed pleadings in those actions, but no releases were obtained until after the adjudication in bankruptcy. In his report to the Referee, the assignee sought authority to pay to the firm the sum of $3,050, conceded to be the reasonable value of services rendered to the assignee, but the Referee refused to allow the payment. That determination was also reversed on review by the district judge, who ordered that $3,050, plus a small sum in reimbursement of advanced costs, which was being held in reserve by the assignee, be paid to Gendel.

In reaching his conclusion, the Referee applied the same standard as to both Gendel, attorney for the assignee, and Quittner, attorney for the creditors' committee.

The Supreme Court held in Randolph v. Scruggs, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903), that compensation for services rendered to an assignee for the benefit of creditors who is superseded by an adjudication in bankruptcy should be allowed if such services shall be found to have been beneficial to the bankrupt estate. Section 2(a) (21) of the Bankruptcy Act, upon which the jurisdiction of the court below was founded, was enacted in 1938, subsequent to the decision in Randolph v. Scruggs. It provides,

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy * * * are hereby * * * invested * * * with such jurisdiction at law and in equity which will enable them * * * to—

* * * * * *

(21) Require * * * assignees for the benefit of creditors * * * to account to the court * * *. Upon such accounting, the court shall reexamine and determine the propriety and reasonableness of all disbursements made * * * by such * * * assignee * * * for services and expenses under such * * * assignment * * * and shall, unless such disbursements have been approved * * * by a court of competent jurisdiction * * * surcharge such * * * assignee * * * the amount of any disbursement determined by the court to have been improper or excessive * * *."

In support of his contention that the Referee's determinations should be reinstated, the appellant cites the recent decision of this court in Flaxman v. Gardner, 353 F.2d 764 (9th Cir. 1966), wherein we said,

"We find nothing in section 2, sub. a(21), or in its legislative history, which precludes a referee from utilizing the Scruggs criterion in determining whether disbursements are excessive or improper. Nor has any decisional law been cited to that effect. On the contrary, cases decided since 1938 appear to rest on the assumption that

'benefit to the estate' is still the proper measure to be applied." 353 F.2d at 767.

As to the claim of Gendel, there is no serious dispute over the quoted proposition. Both the Referee and the district judge treated the case as being controlled by the principle of Randolph v. Scruggs. The real problem is in determining whether or not the particular legal services here involved were of benefit to the bankrupt estate. It is in this regard that the Referee and the district judge are in disagreement.

 Although the appealing trustee does not strenuously urge error in the allowance of fees to Gendel, he suggests that the district judge was required by General Order 47, 11 U.S.C. foll. § 53, to accept the Referee's findings, as to both appellees, that their services did not benefit the estate. The Order provides,

"Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and *the judge shall accept his findings of fact unless clearly erroneous*. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." (Emphasis supplied.)

We do not think the "clearly erroneous" rule is applicable here. The same evidence to which the Referee had access was before the district judge. No question of credibility of witnesses was involved. The Referee's "findings" that the services were of no benefit to the estate were essentially conclusions which the district judge was competent to reexamine. Costello v. Fazio, 256 F.2d 903 (9th Cir. 1958); In re Hercules Gasoline Co., 76 F.2d 677 (9th Cir. 1935). Our court, too, is required to reexamine such conclusions, whether made by the Referee or the district judge. Diamond National Corporation v. Lee, 333 F.2d 517, 523 (9th Cir. 1964); Costello v. Fazio, supra.

The Referee's basic conclusion was predicated upon the theory that the standard of Randolph v. Scruggs requires that there be some concrete result, in the form either of a fund produced or enlarged or of a claim diminished. The district judge believed the Referee's interpretation of the benefit concept to have been overly restrictive, and that "the determination whether legal services and costs are incurred * * * for the benefit of creditors must be made in light of the situation confronting the Assignee at the time such services are contracted and cannot be made solely on the basis of subsequent events."

 As to Gendel's claim, we agree with the district judge. As we said in Flaxman v. Gardner, supra, "[C]ertain services ordered by the assignee may be of benefit to the estate *even though they do not actually result in enlargement of the estate or diminishment of the claims against it*." 353 F.2d at 767. (Emphasis supplied.) The assignee's claim to credit for his disbursements is based upon an *equitable* right to claim such recoupment and compensation as may be *reasonable* for his *efforts* to preserve the estate. See In re Federal Mail & Express Co., 233 F. 691, 695 (D.C.S.D.N.Y. 1916). To construe "benefit" as narrowly as the appellant urges would unduly restrict the operation of that equitable principle.

There is nothing in the record to suggest that the assignee's attorney, Gendel, was allowed an excessive amount for the services which it rendered to the assignee, and under the test which, as to it, was properly applied by the district judge, we see no basis for overturning his finding that the services were beneficial to the estate.

Turning to case No. 20600, involving the Quittner firm, we confront different and more difficult problems. Quittner was originally employed, unofficially and informally, by a committee of only ten creditors which had been selected, not by all the creditors, but only by that "substantial number" which were represented at the creditors' meeting. Its

claim for the fee of $5,000, awarded by the district judge, was based upon the fact that its services had consumed 148 hours of its professional time. The whole service was performed between July 6, 1961, and September 15, 1961. Of the 148 hours, 53 were expended before August 3, 1961, the day when the assignment for the benefit of creditors was made. We believe that the district judge erred in allowing recovery from the estate's assets of a fee for that portion of Quittner's work.

■■ The courts are obliged to further, as best they can, the policy of conservation of a bankrupt estate through the enforcement of economy in the costs of administration. This is a basic consideration which underlies the Bankruptcy Act. Callaghan v. Reconstr. Finance Corp., 297 U.S. 464, 468, 56 S.Ct. 519, 80 L.Ed. 804 (1936); In re Mt. Forest Fur Farms of America, 157 F.2d 640, 644 (6th Cir. 1946). In the light of our obligation under that concept, we are not persuaded that the more liberalized standard applicable to the question of allowance of fees to the attorneys for an assignee is applicable to the claim of an attorney who has acted pursuant to the informal overtures of a select group of creditors. The distinction has been emphasized as follows:

"An assignee acts for the benefit of all creditors and is usually accountable to a state court for the faithful execution of his duties. For this reason, an assignee is granted reimbursement for costs and expenses, unlike with an individual creditor * * * or a group of creditors * * * whose acts are presumed primarily to serve their own interests. Only on overcoming this presumption may the latter be said to have a prima facie case in favor of a claim for reimbursement. The benefit supposedly conferred by them on the estate as a whole is apt to be closely scrutinized. As a rule, their attorney will be referred to his clients for compensation. But situations may arise where the benefit to the estate is obvious, for instance, when creditors have, through much diligence and litigation in state courts, obtained a fund for the benefit of all creditors. In cases of that kind, they may, upon superseding bankruptcy, be reimbursed for their expenses, although they acted originally merely in their own interest." 3 Collier, Bankruptcy ¶ 62.32 [2] (14th ed. 1961). (Emphasis supplied; footnotes omitted.)

There are valid reasons for the application of different criteria. A situation might arise in which there are several groups of creditors of a prospective bankrupt and several unofficial creditors' committees, each of which, perhaps with opposing aims, has employed separate counsel whose fees are subsequently sought from the estate. If each of such counsel should be entitled to compensation from the estate's assets, merely because his services have been helpful in a general way, the policy of economy in administration could be subverted.

■■ When an attorney is selected initially by a particular group of creditors, it is more likely than not that those particularly interested creditors have the most significant claims to protect. In the absence of adequate showing of specific benefit to the estate, which was not here shown to have resulted from the 53 hours of service, he should be compensated for such service by those who select him. As Collier has, in effect, stated, the appropriate tribunal should presume that the primary object of such services was to benefit the members of the informal group which engaged the attorney. Unless it is clearly demonstrated that the services have actually conferred an unquestionable, measurable benefit upon all of the creditors, the selecting group must bear the expense. The services rendered by Quittner prior to the assignment, generally valuable though they may have been, did not directly produce a measurable enhancement of the estate so as to overcome the presumption that they were engaged, commenced, and pursued primarily for the interest of only those creditors who arranged the employment.

Subsequent to the time of the assignment for the benefit of creditors, Quittner devoted 95 hours of time to the work in question. Neither the Referee nor the district judge undertook an analysis of the service rendered in the expenditure of these 95 hours of time, and under the opposing standards which each, respectively, applied, it was unnecessary that they do so. There is no indication that the creditors' committee ever terminated its employment of Quittner, and there is no specific finding that the assignee, at the time of the assignment or thereafter, directly employed Quittner as additional counsel for his own benefit. The Referee did find that the assignee "when he was in need of legal assistance * * * called upon [Quittner] * * * to advise him, as well as the firm of [Gendel] * * *." In the light of the record's uncertainty, there should be a reexamination of Quittner's claim insofar as it is predicated upon the service rendered subsequent to the time of the assignment for the benefit of creditors. If it should be determined that the assignee "called upon [Quittner] * * * to advise him" merely because of his belief that Quittner would supply the requested advice in the performance of continuing obligation to the creditors' committee and that Quittner's assistance was founded upon that consideration without the assignee's agreement to seek to charge the estate for the work, the estate is not to be charged with the expense of the service. On the other hand, if the assignee directly employed Quittner as additional counsel for himself, a determination of the value of so much of the service as was rendered pursuant to such employment may be required. It is not unlikely that an assignee for the benefit of creditors, like a trustee in bankruptcy, may determine, under exceptional circumstances, that it is necessary to employ additional counsel to render a specialized service. He should not be disempowered to do so, but in reaching a conclusion as to whether or not a disbursement by the assignee for such additional service is "improper or excessive" under section 2(a) (21) of the Bankruptcy Act, all relevant factors must be carefully weighed. Among the factors which bear heavily upon the resolution of the issue in a case such as this are whether the performance of the service by the additional counsel was primarily motivated by professional concern for the welfare of some other or others than the assignee, whether the service of the additionally employed counsel involved no more than general duplication of services which were the essential responsibility of the assignee's regular counsel, and whether the contemplated service of the additional counsel under his direct employment by the assignee might possibly impose duties conflicting with the interest of the special group to whom the attorney remains under professional obligation. If any part of Quittner's services are to be regarded as services performed in the capacity of additional counsel to the assignee, and if, after consideration of the foregoing factors and others which may be relevant, there is conviction that compensation for the reasonable value of such services from the assets of the bankrupt estate would not be "improper or excessive," the allowance of such compensation is not dependent upon Quittner's demonstration of specific enhancement of the estate. If the firm qualified as counsel for the assignee, we see no sound reason for depriving it of the same liberal standard, as to "benefit," which is applicable to the claim of the assignee's other attorney.

The bankruptcy court, like any court, must aim for complete fairness, but its sight of equity in the abstract is peculiarly limited by a restriction of paramount public policy, that which requires all reasonable economy in the administration of bankruptcy affairs.

The order in No. 20601 is affirmed.

The order in No. 20600 is reversed, and the cause is remanded.